Parker C. J.
delivered the opinion of the Court. In re *238 gard to the first plea, we are of opinion it is bad for the cause. shown in the special demurrer. Whether there is a record or not, is generally to be tried by the court, and not the jury, for it is to be tried by inspection only, and the court are the proper judges whether what is shown for a record is one.
If the judgment declared on is of a foreign court, it is not treated as a record, and a plea of nul tiel record is not a proper plea ; but under an issue to the country, all exceptions may be taken to what is produced as a record, and the judgment proved is only primó facie evidence of debt.
Not so with domestic judgments, for the record of such being produced, they are conclusive evidence of debt, and there is nothing to submit to a jury, and whether there be such a record as is averred, can be known only by an examination of the book in which it is contained, or an exemplification in due form of law by those who have the custody and keeping of the same.
Now in this respect the judgment of a court of any of the United States is by the constitution and the law of Congress of 1790, put upon the footing of domestic judgments, for being duly authenticated as provided by the law, they are to have the same faith and credit given to them in every other State as they would have in the State where the judgment is rendered ; so that upon inspection of the- authenticated copy, the court to which it is presented are bound to examine it and pronounce judgment upon it in the same manner that they would upon a record of any court of their own State. Mills v. Duryee, 7 Cranch, 481.
The different manner in which the pleadings to a judgment of an Irish court, when declared on in England, have been viewed by the Court of King’s Bench, is owing to the difference of legislation on the subject; for though it is provided by statute, that an action of debt shall be sustained on such a judgment, there is no legislative provision for the manner of authenticating the record, so that it is to be proved by witnesses like other facts, and therefore must be referred to the jury. Collins v. Mathew, 5 East, 473.
Under the second and third pleas, to which an estoppel by the record is pleaded, the question arises, so often and long *239 agitated, whether the judgment of a court in another State is to all intents and purposes to be considered conclusive as a judgment rendered in a court qf the State would be, so that nothing can be averred against it, or whether such a judgment is to some purposes open for examination and inquiry as to the grounds upon which it was rendered.
All agree, that until the adoption of the national constitution, the principles of the common law which are applicable ir ever) country to judgments of the tribunals of foreign countries, were applicable to the judgments of the courts of the several States when sought to be enforced by the judiciary power of any State other than that in which they were rendered : that is, they were considered only as prima facie evidence of debt, were to be declared upon, not as records, but as showing a consideration for a promise or debt, and a plea of nut tiel record was not a proper plea, but non assumpsit or nil debet, according to the form of the declaration.
This was definitively settled in England as the true character of foreign judgments, as early as the year 1778, and had long before been the received law of that country. Walker v. Witter, 1 Doug. 1.
Such was the law, before the revolution, in this and all the colonies and provinces, and so continued until the adoption of the national government, as appears by numerous decisions in the several State courts, which will hereafter be cited to another point ; except that by the statute of 14 Geo. 3, c. 2, in Massachusetts, it was provided that an action of debt might be sustained on judgments of courts of the neighbouring colonies, (alluding probably to the old league between the then New England provinces,) and that the records of those judgments, attested by the clerk of the courts rendering the same, should De good and sufficient evidence. And the statute of the Commonwealth of 1795, c. 61, placed the judgments of courts of all the United States on the same footing on which they were intended to be placed by the constitution of the United States ; an act of legislation which was quite unnecessary after the act of Congress of 1790 before referred to. Under these provisions the judgments of sister States are no longer to be considered as mere foreign judgments, to be proved like other *240 facts by testimony to the jury ; but are to be treated altogether as domestic judgments in regard to the proof of their existence, and therefore the issue on a plea of nul tiel record is to be tried by the court only, so that such a plea concluding to the country is undoubtedly bad, as before stated.
But in regard to the conclusiveness of such judgments to all intents and purposes, there is yet a question of considerable importance, which has been discussed and decided in almost every State in the union in which there are printed reports of their judicial decisions ; and the question is presented now by the issue taken on the second and third pleas to this action. The defendants, in answer to the declaration, say that neither of them was served with notice of the suit in which the judgment was rendered, nor appeared or authorized any one to appear for him in the action, and that Fiske was never an inhabitant of, or resident in the State of Georgia. The plaintiffs reply that the defendants are estopped by the record to deny these facts, and the record being set forth on oyer, the defendants demur to the replication of estoppel. If it appeared by the record that the defendants had notice of the suit, or that they appeared in defence, we are inclined to think that it could not be gainsaid ; for as we are bound to give full faith and credit to the record, the facts stated in it must be taken to be true, judicially ; and if they should be untrue by reason of mistake or otherwise, the aggrieved party must resort to the authorities where the judgment was rendered, for redress, for he could not be allowed to contradict the record by a plea and by an issue to the country thereon. But if the record does not show any service of process, or any appearance in the suit, we think he may be allowed to avoid the effect of the judgment here, by showing that he was not within the jurisdiction of the court which rendered it, for it is manifestly against first principles, that a man should be condemned, either criminally or civilly, without an opportunity to be heard in his defence.
It cannot be pretended, we think, that a citizen of Massachusetts, against whom a judgment may have been rendered in Illinois or Missouri, he never having been within a thousand miles of those States, should be compelled by our courts to execute that judgment, it not appearing by the record that he *241 received any manner of notice that any suit was pending there against him, and being ready to show that he never had any dealings with the party who has obtained the judgment; and yet this must be the consequence, if the doctrine contended for by some is carried to its full length, viz. that the record of a judgment is to have exactly the same effect here as it would have in Illinois or Missouri; for in those States, if the process has been served according to their laws, which may be in a manner quite consistent with an utter ignorance of the suit by the party without the State, thé judgment would be binding there until reversed by some proceedings recognised by their laws.
If it be said that a party thus aggrieved may obtain redress by writ of error, or a new trial, in the State where the judgment was rendered, it is a sufficient answer, that never having been within their jurisdiction or amenable to their laws, he shall not be compelled to go from home to a distant State, to protect himself from a judgment, which never, according to universal principles of justice, had any legal operation against him.
The laws of a State do not operate, except upon its own citizens, extra territorium ; nor does a decree or judgment of its judicial tribunals, except so far as is allowed by comity, or required by the constitution of the United States ; and neither of these can be held to sanction so unjust a principle. If the States were merely foreign to each other, we have seen that a judgment in one would not be received in another as a record, but merely as evidence of debt, controvertible by the party sued upon it. By the constitution, such a judgment is to have the same effect it would have in the State where it was rendered ; that is, it is to conclude as to every thing over which the court which rendered it had jurisdiction. If the property of a citizen of another State, within its lawful jurisdiction, is condemned by lawful process there, the decree is final and conclusive. If the citizen himself is there and served with' process, he is bound to appear and make his defence, or submit to the consequences ; but if never there, there is no jurisdiction over his person, and a judgment cannot follow him beyond the territories of the State, and if it does, he may treat it *242 as a nullity, and the courts here will so treat it, when it is made to appear in a legal way that he was never a proper subject of the adjudication. These principles were settled in a most lucid and satisfactory course of reasoning by Chief Justice Parsons, in the opinion of the Court delivered by him in the case of Bissell v. Briggs, 9 Mass. R. 462. This exposition of the constitutional provision respecting the records and judicial proceedings, authenticated as the act of Congress requires, takes a middle ground between the doctrine as held by the Court of this State in the case of Bartlett v. Knight, 1 Mass. R. 401, and by the court of New York in the case of Hitchcock et al v. Aicken, 1 Caines’s R. 460, in both of which it was held that the constitution and act of Congress had produced no other effect than to establish definitively the mode of authentication, leaving in other respects such judgments entirely upon the footing of foreign judgments according to the principles of the common law. But in the case of Bissel v. Briggs, the principle settled is, that by virtue of the provision of the constitution and the act of legislation under it, a judg ment of another State is rendered in all respects like domestic judgments, when the court where it was recovered had jurisdiction over the subject acted upon and the person against whom it was rendered, leaving open for inquiry in the court where it was sought to be enforced the question of jurisdiction, and taking the obvious distinction between the effect of the judgment upon property within the territory, and the person who was without it. It was thought that this was carrying the sanctity of judgments of other States as far as was consistent with the safety of the citizen who was not amenable to their laws, and as far as is required by the spirit or letter of the constitution of the United States.
The doctrine thus established here has been approved and adopted by the courts of the great States of Pennsylvania and New York, in both of which before it had been held, that the judgments of the several States were to be treated as foreign judgments. The case of Borden v. Fitch, 15 Johns. Rep. 121, is full to this point, and was after the publication of the case of Mills v. Duryee, determined in the Supreme Court of the United States, 7 Cranch, 481, hereafter to be noticed *243 lu this case the opinion of Chief Justice Parsons in the case of Bissell v. Briggs is spoken of as putting the question upon a sound principle ; and so also in the case of Benton v. Burgot, 10 Serg. & Rawle, 242, in Pennsylvania, where the same doctrine is laid down in the opinion of the court delivered by Mr. Justice Duncan.
The principle upon which this exception is made to the conclusiveness in every particular, of the judgments of other States, is well expressed by Mr. Justice Johnson, of the Supreme Court of the United States, when dissenting from the decision of the court in the case of Mills v. Duryee. He says it is an eternal principle of justice, “ that jurisdiction cannot be justly exercised by a State over property not within the reach of its process, or over persons not owing them allegiance or not subjected to their jurisdiction by being found within their limits.”
Indeed, so palpable is this principle, that no doubt could exist in the mind of any lawyer upon the subject, but for the construction supposed to be given to the constitution of the United States, and the act of Congress following it, in the case of Mills v. Duryee, 7 Cranch, 481, and re-sanctioned in the case of Hampton v. M'Connel, 3 Wheat. 234, in the brief opinion delivered by Chief Justice Marshall. This construction, when first referred to in this Court in the case of the Commonwealth v. Green, was supposed to have put an end to all questions on this subject, and to have established as the law of the land, that a judgment recovered in one State by a citizen thereof against a citizen of another, was absolute' and incontrovertible, and would admit of no inquiry even as to the jurisdiction of the court which rendered it. This Court yielded a painful deference to the decision, without that close examination it would have received if presented to them otherwise than incidentally, and if its bearing had been of importance in the case then before the Court; but the notice taken of the case was merely the expression of an opinion arguendo, and not a judicial determination of the question. And as a further reason for not receiving the doctrine implicitly as authority, it may be remarked, that the case to which it was applied was one clearly within the jurisdiction of the court which de *244 cided it, so that the point now raised was not brought into question.
This is not the first occasion we have had to regret a too prompt submission to the decision of the Supreme Court of the United States ; not however from any diminution of entire respect for that eminent tribunal, but because we have found that further consideration has brought about a qualification ol the doctrine which seemed to have been definitively settled, ox that some qualifying principle in the case itself has been overlooked by us, in our readiness to yield supremacy to that comí on all questions in which by the constitution their judgment is paramount. I allude to the decisions of that court on State insolvent laws, in the case of Sturgis v. Crowninshield, 4 Wheat. 122, the effect of which we understood to be, to overrule the decision of this Court in the case of Blanchard v. Russell; in consequence of which we dismissed several cases which might have been maintained on the grounds of that decision. We have since learned by the case of Ogden v. Saunders, 12 Wheat. 213, that there is no decision of the Su preme Court of the United States militating with our decision, and feel ourselves justified in recurring to the principle there decided as the law of this Commonwealth.
The case of Mills v. Duryee has, as its importance merited, undergone a revision in almost every State court in the Union, of whose decisions we have any printed account; and the opinion has been unanimous, without the dissenting voice, so far as we can learn, of a single judge, that that case, however unqualified it may appear in the report, does not warrant the conclusion, that judgments of State courts are in all respects the same when carried into another State to be enforced, as they are in the State wherein they are rendered, but that in all instances, the jurisdiction of the court rendering the judgment may be inquired into. In truth, all of them sanctioning the principles, and some of them by express reference, which were asserted by this Court in the case of Bissell v. Briggs, as the only just exposition of the provision in the constitution of the United States in relation to the records and judicial proceedings of States.
In the State of Maine it does not appear that their courts, *245 since the separation, have been called to consider the question. [1]
In New Hampshire there is a most express limitation of the effect of such judgments, similar to the case of Bissell v. Briggs: the opinion being delivered by Bell J., now a senator of that State in Congress, and concurred in by Woodbury J., holding the same situation. Thurber v. Blackbourne, 1 New Hampsh. R. 246.[2]
In Connecticut the same doctrine was held and ably enforced by Chief Justice Hosmer, in the opinion of the whole Court as delivered by him. Aldrich v. Kinney, 4 Connect. R. 380.
In New York and Pennsylvania the cases before cited maintain the same doctrine ; also Shumway v. Stillman, 4 Cowen, 292.
In New Jersey it was decided that the judgment of a State court is conclusive under the constitution and laws of the United States, between the parties, both parties being in court and a defence made or opportunity had to make it, not otherwise. Curtis v. Gibbs, Pennington, 405.
In Kentucky, if the judgment of a State court be founded on the appearance of the defendant or the actual service of process on his person, the judgment is conclusive, except when it might be impeached in the courts of the State where it is given. But where the defendant did not appear and had constructive notice only, (as by attachment or publication,) it is not conclusive, but may be inquired into and impeached. Rogers v. Coleman, Hardin, 413.[1] The opinion delivered *246 by Mr. Justice Trimble, now of the Supreme Court of the United States, is very full and able, and puts the conclusiveness of the judgment altogether upon the fact of the party’s having had an opportunity to defend himself.
With such a cloud of witnesses in favor of the construction given to the clause of the constitution which is in question, by this Court in the case of Bissell v. Briggs, we may well tea upon that as the true construction, if it is not the most clearly and explicitly overruled by the only tribunal whose authority ought to be submitted to, the Supreme Court of the United States. But notwithstanding all these decisions, many of which are subsequent in point of time to the case of Mills v Duryee, and most of them commenting on it, we should be bound to give up the point, if that case settles the question as conclusively as it has been supposed it did.
But all the State judges who have considered that case, are of opinion that it was intended only to embrace judgments where the defendant had been a party to the suit by an actual appearance and defence, or at least by having been duly served with process when within the jurisdiction of the court which gave it; and they formed their opinion upon the following clause in the opinion of Mr. Justice Story, viz. “ In the present case the defendant had full notice of the suit, for he was arrested and gave bail, and it is beyond all doubt that the judgment of the Supreme Court of New York was conclusive upon the parties in that State.” [2] If this is all that was intend *247 ed to be decided, the case harmonizes with the general course of decisions in the State courts as before cited, and it is in no respect different from the decision of this Court in the case of Bissell v. Briggs.
In a slight examination of the case made by us when considering the case of Commonwealth v. Green, we supposed the decision to be more extensive, and felt bound to yield to it in e collateral question not essential to a determination of the cause then before the Court; but having the general question now brought distinctly before us, we fully concur with the nu merous learned judges who have given the restricted construe tian as above stated, to the decision of the case of Mills v. Duryee.
We therefore are all of opinion, that the record of a judgment of a court of another State is not conclusive evidence, but that to the extent stated in the case of Bissell v. Briggs it is examinable, in order to ascertain whether the party against whom it is produced was subject to the judicial process on which it is grounded ; and that where it appears by the record itself that there was no appearance, and no notice which he was bound to attend to, the judgment against him is a dead letter beyond the territory within which it was pronounced. [1]
Upon inspecting the record produced in support of this action, we find by the return of the officer who was charged with the duty of serving the process, that no notice of the suit was given to Fiske, one of the defendants, nor is it anywhere averred in the proceedings that he was an inhabitant of, or had ever been resident in the State of Georgia. The appearance by the attorney is for Williams alone, who had been duly served with process, and his plea to the action is filed for Williams *248 alone. Afterwards in the recital by the clerk before che rec0I"d of the judgment, it is stated that the same attorney appeared for Fiske as well as Williams, but as this is mere recital founded upon the prior proceedings, this cannot be taken to be an assertion of record that Fiske appeared by attorney, for it appears' by the same record that the attorney appeared for Williams only, and there is no plea filed but for Williams. There is nothing therefore in the record which is contradicted by the second and third pleas, and the replication by estoppel is therefore bad and the plea good; which settles the case in favor of the defendants, unless the judgment can be sustained against Williams alone, and this writ can be amended oy striking out Fiske; [1] but such an amendment would not help the case, for the judgment being entire, if it is a nullity with respect to one, it is also in the whole.[2] Richard v. Walton, 12 Johns. R. 434.
Whether the facts stated in the second and third pleas might be shown in evidence on an issue to a plea of* nil debet, it is immaterial to consider. But such was the plea in the case of Bissell v. Briggs, and there was no objection to the form, and Parsons C. J. says, “ Such judgments,” meaning the judgments of courts in other States, “ may be declared on as evidences of debts or promises, and on the general issue the jurisdiction of the courts rendering them is put in issue; but not the merits of the judgments.” And in New Hampshire, in the case before cited, it is expressly decided that the plea of nil debet is proper for the above purpose. In the other States, generally the question has been raised by a special plea in the form of the second and third pleas in this action. We are *249 inclined to the opinion, that the plea of nil debet may be so used,[3] and that on an issue formed on that plea, if it appear that the court rendering the judgment had jurisdiction, the record is conclusive evidence of the debt,[4] that is, if it appears affirmatively that the defendant was duly served with process within the State, or actually appeared and defended the suit, or appeared by attorney duly authorized ; which latter fact we think may be contested, as was allowed in the case of Aldrich v. Kinney, 4 Connect. R. 380, the record being only prima facie evidence of that fact, because no proof is ordinarily required of authority to act as attorneys.
If it appear by the record that there was no jurisdiction over the person, the judgment is a nullity, not to be received as prima facie evidence, and the plaintiff must resort to other counts to support his action, or fail.
The full faith and credit required to be given in each State to the judicial proceedings of other States, will prevent any evidence to contradict the facts which show a jurisdiction, if such appear on the record.[5]

 In Adams v. Rowe, 2 Fairfield, 95, it is said that the case of Bissell v. Briggs, “ has ever been considered in the State of Maine, as reposing on the soundest principles and sustained by unanswerable arguments.” See also Hall v. Williams, 1 Fairfield, 278; Harding v. Alden, 9 Greenl. 149, 150.

 See Whittier v. Wendell, 7 N. Hampsh. R. 257.

 The same doctrine is held in Ohio; Spencer v. Brockway, 1 Ohio R. 260. See also Goodrich v. Jenkins, 6 Ohio R. 43
For the manner in which this subject is treated in South Carolina, see Miller v. Miller, 1 Bailey, 242.
In Maryland, see Wernway v. Pawling, 5 Gill & Johns. 500.
In Tennessee, see Hodge v. Deaderick, 1 Yerger, 125; Stegal v. Wyche, 5 Verger, 83.
In Illinois it is said, that “ a judgment from a sister State, is conclusive ev *246 idence of the debt claimed; it imports absolute verity and nothing can be averred against it; — unless, perhaps, in cases where from the record and proceedings it should appear that the party had no notice.” Rust v. Frothingham, 1 Breese, 259. A plea to an action of debt on such a judgment, “ that the defendant had not been served with process, had never appeared, or authorized an attorney to appear for him,” is good, unless the record show the contrary. The record cannot be contradicted by evidence. Ibid.

 In Story’s Comm. Confl. Laws, 509, it is said, that although by the constitution of the United States, art. 3, § 4, and Act of Congress of 26th May, 3790, c. 31, the judgments of the State courts are put upon the same footing in other States as domestic judgments, “ yet this does not prevent an inquiry into the jurisdiction of the court in which the original judgment was render ed, to pronounce the judgments, or into the right of the State to exercise authority over the parties on the subject matter. The constitution did not mean to confer any new power upon the States; but simply to regulate the effect of their acknowledged jurisdiction over persons and things *247 within their territory.” See Story’s Comm, on the Constit. c. 29, § 1297 to 1307.

 See Whittier v. Wendell, 7 N. Hampsh. R. 257; Story’s Confl. Laws, 492 et seq., 459 et seq., 509, and eases cited in the notes; Hall v. Williams, 1 Fair-field, 283 to 287; Warren v. Flagg, 2 Pick. (2nd ed.) 448, note 1, and cases there cited; Adams v. Rowe, 2 Fairfield, 94, 95; Borden v. Fitch, 15 Johns R. (2nd ed.) 121, note a; Healey v. Root, 11 Pick. 390; M'Rea v. Mattoon, 13 Pick. 58; Woodward v. Tremare, post, 354; Bradshaw v. Heath, 13 Wendell, 407; Newell v. Newton, 10 Pick. 472.

 After this decision, the same court in which the judgment against Williams and Fiske was originally rendered, on motion of the plaintiff’s counsel permitted an amendment of the record, by striking out the name of Fiske ? and entering up judgment nunc pro tune against Williams alone. This was done after notice to the attorney who had been originally employed in the action by Williams, Williams himself having some years before left the State and never having*returned. An action was brought on the amended judgment in the State of Maine, and the court there held, that they were bound by the constitution of the United States to give ic full faith and credit * to the record. Ball v. Williams, 1 Fairfield, 278.

 See Starbuck v. Murray, 5 Wendell, 162,163.

 As to this plea, see Warren v. Flagg, 2 Pick. (2d ed.) 448, note 1 and the cases there cited; Chipps v. Yancey, 1 Breese, 2; Kimmell v. Shultz, 1 Breese, 128.

 See Starbuck v. Murray, 5 Wendell, 158.

 But see Starbuck v. Murray, 5 Wendell, 148; Holbrook v. Murray 5 Wendell, 161; Shumway v. Stillman, 6 Wendell, 447; Warren v. Flagg, Pick. (2nd ed.) 448, note 1.