## John K. West *v.* His Creditors.

Decision in the case of *Fisher and another* v. *Vose*, 3 Robinson, 457, affirmed.

An application, under the act of Congress of 19th August, 1841, to be declared a bankrupt, made by the insolvent, will have the effect of arresting all proceedings against him, until a decree is rendered by the court sitting in bankruptcy.

One who has applied to be declared a bankrupt, under the act of Congress of 19th of August, 1841, must remain in that situation until he is so declared, or his application is rejected. He has no right to dispose of his property, in any way, while such application is pending. He is bound to preserve it for the common benefit of all his creditors, and may exercise such power over it as may be necessary for that purpose. In a case of involuntary bankruptcy the rule may be different.

Plaintiff having made a surrender of his property under the insolvent laws of the State, subsequently applied to the District Court of the United States to be declared a bankrupt under the act of Congress of 1841. Previous to the latter application, his wife, who had obtained a judgment against him, had levied a *fi. fa.* on a claim belonging to the insolvent, alleged to have formed a part of the property given up to his creditors, at the time of his surrender under the insolvent laws of the State. The syndic appointed under the State laws, having taken a rule upon plaintiff to show cause why he should not deliver to him the certificate of the claim, and neither the assignee under the act of Congress, nor the wife of the insolvent having been made parties : *Held*, that the case must be remanded that the question which of the creditors are entitled to claim, may be decided contradictorily with the assignee, and the wife.

Appeal from the District Court of the First District, *Buchanan*, J.

Garland, J. In the year 1819, West presented a petition to the District Court of the First District, accompanied by a state-

ment of his debts, and a schedule of his property, asking for a meeting of his creditors, and that a respite might be accorded to him. His prayer was granted. He managed his own affairs until the 16th February, 1821, when Lloyd and Harrison and other creditors, presented their petition, alleging that West had not complied with the terms of the respite, and that he would not do it, as he was hopelessly insolvent; wherefore they prayed that he might be compelled to make an actual surrender of his property. This prayer was granted, a meeting of the creditors was held, and Samuel B. Bennett appointed syndic, who took upon himself the administration of the estate.

Among the property which West is said to have possessed at this time, was a large claim upon the Mexican Government, for money advanced, supplies and munitions of different kinds furnished, of which nothing is said on his *bilan* or schedule; but the syndic and the creditors seem to have known of its existence, and to have used various efforts to collect its amount, without success. This claim was finally presented to the Board of Commissioners, which recently sat in the city of Washington, under the provisions of a treaty with Mexico, and a large amount was awarded in the names of Louisa Livingston, executrix of Edward Livingston, deceased, and J. K. West. In the year 1842, a certificate for the sum of $39,286 86, with interest, was delivered by the Secretary of the Treasury to West, who, sometime after, gave it up to the sheriff of the parish of Jefferson, to be sold under an execution issued at the suit of his wife against him.

Bennett, the syndic appointed by the creditors, being informed of this proceeding, on the 11th of November, 1842, took a rule on West to show cause, in four days, why he (West) should not be compelled to deliver up all the property he had surrendered to his creditors, and particularly the certificate above mentioned, and the sheriff of the parish was commanded to bring the certificate into court, which he did.

To this rule, West answered :

*First.* That Bennett is not the syndic of the creditors.

*Second.* That if he ever were named syndic, he has never accepted the appointment; that if he ever accepted it, he has not acted for more than twenty years, and has entirely neglected his

duty, whereby he has forfeited the office, and all the rights he now seeks.

*Third.* That the capacity of syndic is lost by non-user.

*Fourth.* That the claim is prescribed.

*Fifth.* That he denies having any such certificate in his possession.

*Sixth.* That he has become a bankrupt; that proceedings are pending in conformity to the act of Congress in the District Court of the United States; and that the aforesaid certificate has been surrendered for the use of all his creditors, wherefore Bennett has no right to claim it.

*Seventh.* That the syndic has no right to proceed against him in this summary manner; but if he has any rights, that they should be asserted contradictorily with the assignee and the other creditors, who have obtained a vested right in the certificate. ·

Upon this rule and the foregoing exceptions, the parties went to trial. A variety of testimony was introduced, and bills of exception taken, and a judgment was rendered making the rule absolute, and ordering West to deliver to Bennett the property set forth in his schedule, and particularly the certificate, received by him, of the recognition of his claims upon the Mexican Government, as having been surrendered to his creditors. From this judgment, West has appealed.

At the moment when the judge was about to sign his judgment, and after the expiration of three judicial days from the time it was pronounced, E. A. Bradford, Esq. presented himself and stated to the court that he had been appointed assignee of West by the District Court of the United States, in which tribunal West had been declared a bankrupt; and he exhibited a certificate of the fact, from the records thereof, and moved the court for a rule on Bennett, the syndic, to show cause why the judgment should not be set aside, and a new trial granted, on the ground that the judgment was contrary to law and evidence; that at the time it was rendered, there were no proper parties before the court; and that after his appointment as assignee, all further proceedings on the rule should have been arrested. The decree of bankruptcy is dated on the 5th of December, 1842, and the judgment on the rule was signed on the 14th of the same month. This applica-

tion was rejected by the judge as too late, and on the further ground that the assignee did not represent West for any of the purposes mentioned in the rule. To this opinion, Bradford took a bill of exceptions, and from the refusal of the judge to accede to his motion, he has appealed.

In consequence of the view we have taken of the sixth exception, we will not at present decide upon the five which precede it. It may become necessary for us to express an opinion upon them, should the case come before us again.

We are of opinion that the judge erred in overruling the sixth exception, and in proceeding to try the cause. The record shows that on the 8th of November, 1842, West filed his petition to be declared a bankrupt, in the District Court of the United States. On the schedule presented by him, the certificate in controversy is placed as forming a portion of the assets surrendered. The rule taken by the syndic was asked for three days after the filing of the proceedings in bankruptcy, and the judge of the inferior court had the evidence of the fact before him. The time fixed by the United States Court, for hearing the application of West was not distant, and the record shows that the decree of bankruptcy was obtained and the assigneee appointed, before the District Judge had disposed of the rule. The judge ought to have suspended any action upon the rule before him, until the result of the case in the District Court of the United States was ascertained, and a legal representative of the creditors called into that tribunal appointed, and their interests represented.

This case presents, in a strong point of view, the difficulties and collisions that will arise between the State and United States tribunals, if it be permitted to suitors to pursue their rights in the former, whilst their debtor is suing them for a discharge in the latter. As before stated, nothing appears on record in relation to this claim on the Mexican Government, in the suits for the respite in 1819, and for the forced surrender in 1821, whilst in the application to become a bankrupt, it is formally surrendered; yet we see one of our courts proceeding by a summary trial and process to compel the bankrupt to deliver up to the syndic, a piece of property, or evidence of debt, which he had offered to surrender to other creditors, and giving a judgment affecting the interest of

those creditors, without giving them an opportunity of being heard.

Upon a full reconsideration of the principles laid down in the case of *Fisher and another* v. *Vose*. 3 Robinson, 457, decided in January last, we are satisfied of their correctness. That opinion is in accordance with that of one among the ablest of the judges of the Supreme Court of the United States, (Judge Story,) and with that of the Supreme Court itself. See the case of *Hunter* v. *The United States*, 5 Peters, 173. Judge McLean, in delivering the opinion of the court says : " until the court, in the exercise of their judgment, determine that the applicant is entitled to the benefit of the law, and in pursuance of its requisitions he assigns his property, the proceedings are inchoate and do not relieve the party. It is the transfer which vests in the assignee the property of the insolvent, for the benefit of his creditors. If before the judgment of the court, the petitioner fail to prosecute his petition or discontinue it, his property and person are liable to execution, the same as though he had not applied for the benefit of the law ; and if after the judgment of the court, he *fail to assign his* property, it will be liable to be taken by his creditors on execution.

"The property placed upon the inventory of an insolvent may be protected from execution while he prosecutes his petition, but this cannot exclude the claim of a creditor who obtains a judgment, before the assignment." These remarks it is true, were not made in a case arising under the bankrupt law ; but in one, under the statute of a state relative to insolvency, similar in many respects to the voluntary bankrupt act. The high tribunal which gave this opinion, thought that a priority obtained by a judgment, rendered previous to the assignment and the proceedings in insolvency, was not excluded or lost by them, but that during the prosecution of the application, the property might be protected from execution.

In the case of *Sturges* v. *Crowninshield*, 4 Wheaton, 122, the Supreme Court says that the line of partition between bankrupt and insolvent laws, is not so distinctly marked, as to enable any person to say with positive precision, what belongs exclusively to the one, or to the other class. A bankrupt law may contain the regulations which are generally found in insolvent

laws; and an insolvent law may contain those which are common to a bankrupt law. If that court found it so difficult to distinguish between the provisions of an insolvent law, and those of the bankrupt acts they then had allusion to, we think it would be much more difficult for the learned judges who compose that court, to draw a distinction between a voluntary bankrupt act and an insolvent law of one of the States. If it be true, that there is so little difference between the two kinds of laws, then the principles advanced in the case in 5 Peters, 173, are as applicable to the one as to the other.

It has been urged in this court that, after an application has been made to be declared a bankrupt, suits may be brought, judgments obtained, and executions issued in the same manner as if no proceedings were pending, and that no step can be taken to arrest such a course, until a decree is rendered and an assignee appointed. Whether this might not be so, in a case of involuntary bankruptcy, it is not necessary now to decide; but where the bankruptcy is admitted by the party, and all he seeks is a discharge, it would be at war with every principle of uniformity and equality among creditors to permit such a course, and thus allow the property to be scattered over the whole country, and sacrificed at forced sales, with no other purpose or effect, than to accumulate costs, and to give preferences to those creditors, whose claims might be favored by the bankrupt, or be forced by extra vigilance to a judgment and execution. The court, while sitting in bankruptcy, is one of equity, and should see all the creditors alike protected, and the property surrendered for their benefit preserved. It seems to us that ample power is given to the tribunals of the United States, to make use of all conservatory means to protect both creditors and debtors, by the 6th section of the bankrupt law of 1841, and the general powers conferred on the courts by the acts of Congress of 1789 and 1793, (2 Laws U. S. p. 64, sec. 14, and p. 357, sec. 7,) and by other provisions made by Congress.

We cannot, in a case of voluntary bankruptcy, give our assent to the argument advanced in this court, that the bankrupt, after he files his application for a discharge, still retains, up to the date of the decree, the full dominion over, and right to dispose of his

property as he pleases. His title, to be sure, is not absolutely divested, but the creditors from the moment of filing the petition have an interest in the property, and the debtor is according to the first section of the bankrupt act, deemed a bankrupt within the purview of it, and must stand in that situation until he is so declared, or his application is rejected. We do not believe an applicant for the benefit of the bankrupt law has a right to dispose in any manner of his property, pending his application. He is bound to keep it, as the common pledge of all his creditors, and for that purpose may exercise such legal dominion and rights as will enable him to do so. In a case of involuntary bankruptcy the rule may be different, because the fact is not admitted, and the act causing the party to be declared a bankrupt has to be ascertained and decreed. It would, therefore, be unjust, in a case where the bankruptcy is denied, and is the subject of judicial investigation, to deprive a party of the control of his property upon the mere accusation; yet cases are not wanting in the English books, from whence most of our ideas in relation to this branch of jurisprudence seem to be drawn, in which it has been done on sufficient cause being shown. It would not be difficult to imagine a case, where, if an application should be made by a creditor to have his debtor declared a bankrupt, the court would be fully authorized and justified in having the property secured, so that the creditors might have the benefit of it, in case a decree should be entered in favor of the petitioner; otherwise the creditors might be seriously injured, or, if the court be powerless, their rights might be entirely lost.

At the time when the rule was taken by the syndic, it appears that the certificate in controversy was in the hands of the sheriff of the parish of Jefferson, having been seized under an execution against West. The plaintiff in that execution was not made a party to the rule, and no other order was made on the sheriff than to produce the certificate. The creditors who were parties to the application for bankruptcy, have had no opportunity of asserting any rights they may have, and West was clearly not competent to represent them, after he had been declared a bankrupt, and an assignee had been appointed. For the purpose of having the question—which class of creditors is entitled to the benefit of the

certificate in controversy, finally settled, we think the cause should be remanded, that the assignee may become a party and the case be tried between them. It would also appear just, that West's wife, who has had an execution levied on the certificate, should be made a party, so that the claims of all concerned may be examined and decided on.

The judgment of the District Court is, therefore, annulled and reversed, and the cause remanded for a new trial, with directions to permit E. A. Bradford to become a party to the rule, and to proceed to the trial of the case in the manner directed by law; the appellee, in his capacity of syndic, paying the costs of the appeal.

*L. C. Duncan*, and *A. Hennen*, for the syndic.

*Grymes*, for the appellants.