IN THE SUPREME COURT OF THE PROVISIONAL GOVERNMENT OF OREGON, JUNE TERM, 1847.

## HENRY B. KNIGHTON, Plaintiff in error, *v.* HUGH BURNS, Respondent in error.

ERROR TO THE CLACKAMAS CIRCUIT COURT.

1. The prohibitory clause contained in the organic law, art. I., sec. 2, is taken in the substance of its provisions from the Constitution of the United States, prohibiting the passage of laws impairing the obligation of contracts.
2. Any deviation from the terms of a contract impairs it, and the objection to a law on the ground of its impairing the obligation of contracts can never depend upon the extent of the change which the law affects in it.
3. While the remedy to enforce the obligation of a contract may be modified, yet the obligation of the contract itself is inviolable.
4. Any construction of the act of December 12, 1845, entitled "An act relative to the currency, and subjecting property to execution," which would admit of scrip constituting the basis of a legal tender, impairs the obligation of a contract.
5. Parties are presumed to contract with reference to existing laws.
6. Independently of the organic law it is a general rule, subject to exceptions, that statutes shall have a prospective operation only.
7. The prohibition extends to all rights accruing under all contracts, whether written or verbal, whether expressed or implied, and whether arising from the stipulations of the parties or accruing by operation of law.

*Burnett & Lovejoy*, for plaintiff in error.

*W. G. T' Vault*, attorney for defendant in error.

By the Court, J. QUINN THORNTON, C. J.:

This cause came up from the circuit court upon a statement of facts presented in a bill of exceptions. On the 4th of November, 1845, the defendant executed to the plaintiff a note for $150, payable November 1, 1846. An action was brought upon this note before a Justice of the Peace, where judgment was rendered against the maker, from

which an appeal was taken to the Clackamas circuit court. This court rendered a judgment against defendant for $146 43, payable in currency, scrip excepted, together with costs. On the trial of the cause at the April term, 1847, the defendant, to maintain the issue on his part, proved that he had tendered to the justice of the peace before whom the trial was originally had, the full amount of the debt, interest and cost, up to the time of filing of the plea of tender in Oregon scrip to the amount specified in the plea of tender. The defendant tendered in the circuit court also, the full amount in Oregon scrip. The plaintiff objected to receiving the scrip in payment of the debt, interest and cost, which objection was sustained by the court.

The organic law, art. I., sec. 2, declares that "no law ought to be made or have force in said territory, that shall, in any manner whatever, interfere with or affect private contracts or engagements, *bona fide*, and without fraud previously formed." This is a prohibition of great moment affecting extensively the legislative branch of the established government. It is taken in the substance of its provisions from the constitution of the United States, in which there is no prohibitory clause which has given rise to more various and able discussion or more protracted litigation. The first important case arising under the clause as found in that constitution was the case of *Fletcher* v. *Peck*, 6 Cranch, 87. In that case, it was decided that when a law was in its nature a contract and absolute rights have vested under that contract, a repeal of that law could not divest those rights. The supreme court went again and more largely into the consideration of this interesting and fundamental doctrine, in the case of *Territ* v. *Taylor*, 9 Cranch, 43. It was there held that a legislative grant, competently made, vested an indefeasible and irrevocable title. But it was in the great case of *Dartmouth College* v. *Woodward*, 4 Wheat., 518, that the inhibition to impair by law the obligation of contracts received the most elaborate discussion. In that case, the principles previously recognized were not only greatly elaborated, but efficiently and instructively applied to new cases. The late venerated and learned Judge Story added many new and interesting views of the nature of contracts which the framers of the constitution intended to protect. The argument of the court in this

celebrated case, the full and elaborate exposition of the constitutional sanctity of contracts, and the decision made in it, did much to throw an impassable barrier around all rights and franchises, and to give solidity to the institutions of the country. The same constitutional prohibition came again under discussion in the case of *Green* v. *Biddle*, 8 Wheat., 1, in which it was decided that any deviation from the terms of a contract impaired it, and that the objection to a law on the ground of its impairing the obligation of a contract, could never depend upon the *extent* of the change which the law affects in it.

In the case of *Sturgis* v. *Crowningshield*, 4 Wheat., 122, the operation and effect of this constitutional prohibition was again extensively inquired into. This was a case which arose out of the retrospective operation of an act of the legislature of New York, passed in April, 1811, by which the defendant had been discharged as an insolvent debtor upon his single petition, from the obligation to pay two promissory notes executed by him in March of the same year, and upon his surrendering his property without the concurrence of any creditor.

In the opinion delivered by the late Chief Justice Marshall, a broad and well defined distinction was made between the contract and the remedy for the enforcement of that contract; and the court held that while the remedy to enforce the obligation of a contract might be modified as the wisdom of the legislature should direct, yet the constitution intended to restore and preserve public confidence completely, by establishing the great principle that the obligation of contracts should be inviolable. And all experience, even if this had been necessary to an understanding of the subject, hath shown that the framers of the constitution acted wisely in incorporating this prohibitory clause in that instrument, and that its expounders merit the gratitude of the nation for having had the firmness to give to it such a construction as affords an ample remedy for the consequences which must otherwise result from the temporary expedients of legislators. The supreme court admitted in this case, that the states might by law discharge debtors from imprisonment, and that they might pass statutes of limitation, because these relate only to the remedy affecting only the means of coercion, while the obligation of the con-

tract is left where the parties chose to place it.   But that a law which discharges a debtor from his contract to pay by a given time, without performance, and releases him entirely from any future obligation to pay, impaired, because it entirely discharged the obligation of the contract.   Any construction, therefore, of the act of the legislature of Oregon territory, December 12, 1845, which would admit scrip constituting the basis of a legal tender on the part of the defendant, would contravene the organic law, art. I, sec. 2, because, although it would not entirely discharge the defendant from the payment of the note, yet it would impair the obligation of the contract embraced in the note, by making that a lawful tender which was not contemplated by the parties at the time of its date, to-wit: November 4, 1845. The supreme court of New York in *Mather* v. *Bush*, 6 John. Rep., 233; the Chief Justice of Massachusetts, in *Blanchard* v. *Russell*, 13 Mass. Rep., 1; the Court of Chancery of New York in *Hicks* v. *Hotchkiss*, 7 John. Ch. Rep., 187, took a distinction between the case of a contract made before, and one made after the passage of the act; and they held that an insolvent act in force when the contract was made, did not, in the sense of the court, U. S., impair the obligation of that contract, because *the parties are presumed to contract with regard to existing laws.*   Were this rule applied to the case now before the court, it would of itself determine the question presented.   The laws existing at the time the contract was made for the payment of the money, did not recognize scrip as constituting any part of the legal currency of the country, nor did it do so until more than one month after the execution of the note.   But the supreme court of the United States, in *McMillan* v. *Neill*, 4 Wheat., 209, carried this doctrine much farther, and held that a discharge under a state insolvent law, *existing when the debt was contracted*, impaired the obligation of a contract.   As the decisions now stand, the debt, in order that a discharge may extinguish the remedy against the future property of the debtor, must be contracted after the passage of the act *within* the *state*, and between citizens of the state.   The principles thus settled are the law of the present case, in which the contract was made *before* the passage of the law.

　　The supreme court of Indiana, 1 Blackford's Rep., 220, in *Lewis* v. *Breckenridge*, following the current of decisions,

decided that this constitutional provision must be considered as rendering void any statute which is retrospective, and which destroys a vested right of action arises *ex contractu*; but that the legislative power to regulate the time and manner in which rights shall be legally demanded, does not interfere with the rights themselves. It was also held, independently of the constitution, to be a general rule, subject, however, to exceptions, that statutes shall have a prospective operation only. The constitutional provision, therefore, that no law impairing the obligation of contracts shall ever be made, extends to all rights accruing under all contracts, whether written or parol, whether expressed or implied, whether arising from the stipulation of the parties, or accruing by operation of law. Persons, therefore, who contract to pay a given sum in cash will be required to make payment in cash; and persons who contract to pay in a named sort of funds or property, will be held to the fulfillment of their engagements, or be required to pay in coin an amount equal to the funds or property contracted to be paid. (4 Kent Com., 412, 421.)

It is clear, therefore, that the plea of tender was bad, and that payment can be made in only that which might been legally tendered in payment of debts, November 4, 1845.

Judgment below affirmed with costs.