17 U.S. 122 (____)
4 Wheat. 122
BANK OF COLUMBIA
v.
OKELY.
Supreme Court of United States.

*123 February 17th. Key, for the plaintiff.
Jones, contrà.
*125 February 22d, 1819. JOHNSON, Justice, delivered the opinion of the court.
In this case, the defendant contended, that his right to a trial by jury, as secured to him by the constitution of the United States, and of the state of Maryland, has been violated. The question is one of the deepest interest; and if the complaint be well founded, the claims of the citizen on the protection of this court are peculiarly strong.
The 7th amendment of the constitution of the United States is in these words: *"In suits at common law, where the value in controversy [*241 shall exceed twenty dollars, the right of the trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined, in any court of the United States, than according to the rules of the common law." The 21st article of the declaration of rights of the state of Maryland, is in the words of Magna Charta. "No freeman ought to be taken or imprisoned, &c., or deprived of his life, liberty or property, but by the judgment of his peers, or by the law of the land."
The act by which this bank is incorporated, gives a summary remedy for the recovery of notes indorsed to it, provided those notes be made expressly negotiable at the bank, in their creation. This is a note of that description; but it is contended, that the act authorizing the issuing of an execution, either against the body or effects of the debtor, without the judgment of a court, upon the oath and demand of the president of the bank, is so far a violation of the rights intended to be secured to the individual, under the constitution of the United States, and of the state of Maryland. And as the clause in the act of incorporation, under which this execution issued, is express as to the courts in which it is to be executed, it is further contended, that there is no provision in the law of congress for executing it in this district.
We readily admit, that the provisions of this law are in derogation of the ordinary principles of private *rights, and, as such, must be subjected [*242 to a strict construction, and under the influence of this admission, will proceed to consider the several questions which the case presents.
The laws of the state of Maryland derive their force, in this district, under the first section of the act of congress of the 27th of February 1801. But we cannot admit, that the section which gives effect to those laws, amounts to a re-enactment of them, so as to sustain them, under the powers of exclusive legislation, given to congress over this district. The words of the act are, "the laws of the state of Maryland, as they now exist, shall be and continue in force in that part of the said district, which was ceded by that state to the United States." These words could only give to those laws that force which they previously had in this tract of territory under the laws of Maryland; and if this law was unconstitutional in that state, it was void there, and must be so here. It becomes, then, unnecessary to examine the question, whether the powers of congress be despotic in this district, or whether there are any, and what, restrictions imposed upon it, by natural reason, the principles of the social compact, or constitutional provisions.
*126 Was this act void, as a law of Maryland? If it was, it must have become so, under the restrictions of the constitution of the state, or of the United States. What was the object of those restrictions? It could not have been to protect the citizen from his own acts, for it would then have operated as *243] a restraint upon his rights; it must have been against the acts *of others. But to constitute particular tribunals for the adjustment of controversies among them, to submit themselves to the exercise of summary remedies, or to temporary privation of rights of the deepest interest, are among the common incidents of life. Such are submissions to arbitration; such are stipulation bonds, forthcoming bonds, and contracts of service. And it was with a view to the voluntary acquiescence of the individual, nay, the solicited submission to the law of the contract that this remedy was given. By making the note negotiable at the Bank of Columbia, the debtor chose his own jurisdiction; in consideration of the credit given him, he voluntarily relinquished his claims to the ordinary administration of justice, and placed himself only in the situation of an hypothecater of goods, with power to sell on default, or a stipulator in the admiralty, whose voluntary submission to the jurisdiction of that court subjects him to personal coercion. It is true, cases may be supposed, in which the policy of a country may set bounds to the relinquishment of private rights.[1] And this court would ponder long, before it would sustain this action, if we could be persuaded, that the act in question produced a total prostration of the trial by jury, or even involved the defendant in circumstances which rendered that right unavailing for his protection. But a power is reserved to the judges, to make such rules and orders, "as that justice may be done;" and as the possession of judicial power imposes an obligation to exercise it, we flatter ourselves, that in practice, the evils so eloquently dilated on by the counsel do not exist. *244] And if *the defendant does not avail himself of the right given him, of having an issue made up, and the trial by jury, which is tendered to him by the act, it is presumable, that he cannot dispute the justice of the claim. That this view of the subject is giving full effect to the seventh amendment of the constitution, is not only deducible from the general intent, but from the express wording of the article referred to. Had the terms been, that "the trial by jury shall be preserved," it might have been contended, that they were imperative, and could not be dispensed with. But the words are, that the right of trial by jury shall be preserved, which places it on the foot of a lex pro se introducto, and the benefit of it may, therefore, be relinquished.[2] As to the words from Magna Charta, incorporated into the constitution of Maryland, after volumes spoken and written with a view to their exposition, the good sense of mankind has at length settled down to this: that they were intended to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice. With this explanation, there is nothing left to this individual to complain of. What he has lost he has voluntarily relinquished, and the trial by jury is open to him, either to *127 arrest the progress of the law, in the first instance, or to obtain redress for oppression, if the power of the bank has been abused. The same answer is equally applicable to the argument founded on the third article of the Maryland constitution.
In giving this opinion, we attach no importance to *the idea of this [*245 being a chartered right in the bank. It is the remedy, and not the right; and, as such, we have no doubt of its being subject to the will of congress. The forms of administering justice, and the duties and powers of courts as incident to the exercise of a branch of sovereign power, must ever be subject to legislative will, and the power over them is inalienable, so as to bind subsequent legislatures. This subject came under consideration in the case of Young v. Bank of Alexandria, 4 Cranch 384, and it was so decided.
The next question is, whether the courts of this district are empowered to carry into effect the summary remedy given to the bank in this case? The law requires the application for process to be made to the clerk of the general court, or of the county court for the county in which the delinquent resides, and obliges such clerk to issue the execution, returnable to the court to which such clerk is attached. Unless, therefore, the clerk of this district is vested with the same power, and the courts with jurisdiction over the case, the bank would not have the means of resorting to this remedy.
The third section of the act of February 1801, does not vest in the courts that power. It only clothes the courts and judges of this district with the jurisdiction and powers of the circuit courts and judges of the United States. But we are of opinion, that this defect is supplied by the fifth section of the same act, taken in connection with the fifth *section [*246 of the act of March 3d, 1801. By the former section, the courts of the district are vested generally with jurisdiction of all causes in law and equity; and, by the latter, the clerks of the circuit court are required to perform all the services then performed by the clerks of the counties of the state of Maryland. Among those services is that of instituting a judicial proceeding in favor of this bank, and the return of that process is required to be to the court with which such clerk is connected. That court has jurisdiction of all cases in law arising in this district, and thus the suit is instituted by the proper officer, by writ returnable to a court having a jurisdiction communicated by terms which admit of no exception.
Upon the whole, we are of opinion, that the law is constitutional, and the jurisdiction vested in the courts of the district; and therefore, that the judgment must be reversed, and the cause remanded for further proceedings.
Judgment reversed.
NOTES
[1] A prospective waiver of the benefit of the exemption law, is void. Kneettle v. Newcomb, 22 N.Y. 249. So is a prospective waiver of the benefit of a law exempting wages from attachment. Firmstone v. Mack, 49 Penn. St. 387. And of the right to recover back usurious interest. Bosler v. Rheem, 72 Id. 54.
[2] See Baker v. Braman, 6 Hill 47.