Raguet v. Wade.

---

107]          *HENRY RAGUET v. DAVID WADE.

Law authorizing tax upon merchants not unconstitutional.

RESERVED from Hamilton county.

The declaration is for taking and carrying away goods, etc., of the plaintiff to the value of five hundred dollars.

The defendant pleads, *first*, the general issue.

*Second.* That the defendant was treasurer of the county of Hamilton, and as such was authorized by law to collect all taxes assessed by and under the authority of the State of Ohio within said county. That at the time of seizing and taking said goods the plaintiff was a merchant, selling goods, wares, and merchandise, within said county, and was subject to pay a tax upon his capital employed, etc., and being so subject was taxed in the sum of —— dollars, under and by virtue of the laws aforesaid; and said tax being so laid and assessed, was placed in the defendant's hands, as treasurer, to collect; and the plaintiff wholly neglecting and refusing to pay the same, defendant entered, etc., and took, etc., and disposed of said goods according to law, which is the same, etc.

The plaintiff replies that his capital was employed in importing into this state from other states, and that he was vending, by wholesale and retail, divers, etc., the growth, etc., of foreign countries and other states, etc., and he, the plaintiff, imported direct from said states, in bulk and in packages, put up by the manufacturer, none of which, by law, were the subject of taxation by the state authority, etc.

To this replication there is a general demurrer and joinder. The question submitted was, whether the law of the state, imposing a tax upon the capital employed by merchants is constitutional.

HAMMOND, for plaintiff.

WADE, for defendant.

Opinion of the court, by Judge SWAN:

This presents an inquiry of acknowledged delicacy, concerning the constitutional powers of the general and state *govern- [108 ments. The question is deeply interesting to this state, as her citizens must depend upon this general legislative authority for the preservation of their faith and the completion of the public works they have undertaken. It is imposing, as it involves the exercise of sovereign power. The acts of the legislature, supposed to be in conflict with the constitution and laws of the United

States, were passed February 3, 1825, and January 17, 1826, and, so far as concerns the present inquiry, are in these words : " All persons trading in foreign or domestic goods, wares and merchandise, or drugs and medicines, within this state, whether the capital employed in such trade shall be owned within the state or elsewhere, shall be considered merchants, and as such shall be classed according to the amount of annual capital by them respectively employed." The act of January 17, 1826, is exactly in the same words, except " they are to be entered on the general list of taxation, and as such shall be assessed according to the amount of capital by such merchants respectively employed," etc. This is a part of an equitable system of taxation, adopted to meet the disbursements for canals, as well as to defray the general expenses of the government. The right of taxing capital employed in merchandise, of licensing tavern-keepers to vend foreign and domestic liquors, and of regulating retailers, peddlers, and brokers, has been exercised without question as to its constitutional existence from the foundation of the state government. Whatever, then, may be the effect, it would be unjust to impute to the legislature any intentional invasion of the laws of Congress, or the constitution of the United States.

The plaintiff insists that these acts of the legislature are repugnant to article 1, section 10, of the constitution of the United States, which declares that no state shall, without the consent of Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws; and also to article 1, section 8, which says Congress shall have power " to regulate commerce with foreign nations, and among the several states, and with the Indian tribes."

The powers of the general and state governments, under these clauses of the constitution, have been so often and so *ably discussed, and the principles so profoundly considered by the Supreme Court of the United States, that nearly the whole grounds have been occupied, and but little remains for us other than the application of those principles as settled to the case presented by the pleadings. The powers of the different governments under article 1, section 10, of the constitution, are very candidly and ably examined in the thirty-second number of the Federalist, by Mr. Hamilton. This fair and profound commentary upon the constitution has deserved and received the approbation of the highest

Raguet *v.* Wade.

judicial tribunal in the nation. The power of the states to impose taxes on all articles other than exports or imports, is there contended to be "manifestly a concurrent and co-equal authority," etc. There is plainly no expression in the granting clause which makes that power exclusive in the Union. There is no independent clause or sentence which prohibits the states from exercising it. So far is this from being the case, that a plain and conclusive argument to the contrary is deducible from the restraint laid upon the states in relation to the duties on imports and exports. This restriction implies an admission, that if it were not inserted the states would possess the power it excludes; and it implies a further admission, that as to all other taxes the authority of the states remains undiminished. In any other view it would be both unnecessary and dangerous. It would be unnecessary, because if the grant to the Union of the power of laying those duties implied the exclusion of the states, or even their subordination in this particular, there could be no need of such restriction; it would be dangerous, because the introduction of it leads directly to the conclusion which has been mentioned, and which, if the reasoning of the objectors be just, could not have been intended. I mean that the states, in all cases to which the restriction did not apply, would have a concurrent power of taxing with the Union. In the case of Sturges *v.* Crowninshield, 4 Wheat. 122, one of the principles recognized was, that the mere grant of a power to Congress did not imply a prohibition on the states to exercise the same power; but wherever the terms in which a power is granted to Congress, or the nature of the power, required that it should be exercised exclusively by Congress, the subject is as completely taken from the state *legislatures as if they had been expressly forbidden **[110** to act upon it. This leaves a class of cases in which the general and state governments have co-ordinate and concurrent powers of legislation. The states were, therefore, not forbidden to pass bankrupt laws, provided they should contain no principle which would violate section 10, of article 1, of the constitution of the United States.

In the case of Gibbons *v.* Ogden, 9 Wheaton, 1, it was decided that the power to regulate commerce was the power to prescribe the rule by which commerce was to be governed; that it was complete in itself; might be exercised to its utmost extent, and had no limitations other than those prescribed in the constitution. But

the court say, " The grant of the power to lay and collect taxes, is like the power to regulate commerce made in general terms, and has never been understood to interfere with the exercise of the same power by the states, etc. The power of taxation is indispensable to their existence, and is a power which, in its own nature, is capable of residing in, and being exercised by, different authorities at the same time"—p. 199. The co-ordinate authority seems a necessary result of the division of sovereign power. The self-preservation of both governments requires the exercise of the taxing power; and it seems admitted by the whole tenor of the constitution. The principle appears established beyond controversy, that the states can tax all articles concurrently with the general government, except imports and exports, or where it will interfere with the power of Congress to regulate commerce. The case of Brown and others *v.* The State of Maryland, 12 Wheat. 419, is supposed by the plaintiff to be an authority exactly in his favor; and that the principles decided require this court to pronounce the law under consideration unconstitutional and void. The law of Maryland required " importers of foreign articles or commodities, of dry goods, wares, or merchandise, by bulk or package, etc., and other persons selling the same by wholesale, bale, or package, etc., before they were authorized to sell, to take out a license, etc., for which they should pay fifty dollars." The penalty and forfeiture were the amount of the license, and one hundred dollars to be recovered by indictment. The provisions of this law were held to **111]** be in conflict with the powers vested in the *Congress by the United States, as well as that article of the constitution which inhibits a state from laying any duties upon imports. The court held the principle to be sound, that a grant to import included a power to sell, subject to some limitation, and that the article imported, as well as the importer, were constitutionally protected from local legislation. " Any penalty," says the court, " inflicted on the importer, for selling the article in his character of importer, must be in opposition to the act of Congress which authorizes importation. Any charge on the introduction and incorporation of the articles into, and with the mass of property in the country, must be hostile to the powers given to Congress to regulate commerce, since an essential part of that regulation, and the principal object of it, is to prescribe the regular means of accomplishing that introduction and incorporation.". The powers of a state to tax its

Raguet *v.* Wade.

own citizens, or their property within its jurisdiction, are admitted to be sacred; but these can not be exercised so as to obstruct the operations of an act of Congress, or defeat their constitutional right to regulate commerce. The correctness of these views is evident from the whole tenor of the instrument, which establishes the fundamental principles of the government, and from the very nature of our complex system: Without a recognition of them, the portions of sovereignty which have been given and retained by the general and state governments could not exist. The one or the other would sink for want of support, and a consolidation or separation would be the necessary result. The powers of the governments approach each other, until they are only separated by delicate shades and almost imperceptible gradations. It is difficult to trace with certainty, but yet it is hoped not impossible, the line that separates the constitutional powers of the general and state governments. The constitution has not, in all cases, exactly marked the termination of the one nor the commencement of the other. Perhaps no skill in the science of government could, in all cases, fix the line of limitation. We have it from the highest judicial authority, that should the general and state governments, in the exercise of their powers, come in conflict, "that which is not supreme must yield to that which is supreme." The Supreme Court of the United States felt and acknowledged the difficulty of establishing a rule universal *in its application, [112 a rule which should fix the boundary between the constitutional powers of the general and state governments, upon the subject of taxation. They have not determined the exact point where the operations of the grant to the importer shall cease, upon the articles imported, to protect them from state imposition.

A rule, however, is suggested, and applied more than once in the decision of the court, which, with great deference, is deemed too vague and indefinite, even for practical purposes, and can not be adopted as a guide in judicial determinations. It is this, "when the importer has so acted upon the thing imported, that it has become incorporated and mixed up with the mass of property in the country, it has, perhaps, lost its distinctive character as an import, and has become subject to the taxing power of the state." This rule seems to have been suggested from that similar principle, that if one mingle his money with another's, so that the proportions can not be distinguished in the mass, the other shall have

the whole. In some states, and respecting some articles, this rule might operate with justness and propriety; but by far the greater proportion of foreign commodities, and those from other states, are never mixed with the mass of property so as to lose their identity. This is peculiarly the case in the agricultural states. The stock of our merchants consists, almost exclusively, of articles from other states and countries, which can as well be discovered singly as in packages, bales, or trunks. The brandy of France, or the wine of Germany or Spain, can be as easily distinguished in bottles as in pipes. It would seem a task not much less difficult, to discover what should be considered an incorporation, and mixing up of property, so as to admit the laying of a tax upon the articles by the state, as it was before to find the limits of local legislation, under the constitution. The power of taxing property within its jurisdiction by a state, although the same has been subjected to imposts by the laws of the United States, seems never to have been directly denied by the bar or court. Its exercise, after the right acquired under the laws of the general government has ceased, is required by principles of self-preservation, and is acknowledged to be consistent with a correct construction of the constitution. The difficulty is not in the power, but in the **113**] extent of *its application, so as not to come in collision with the co-ordinate authority of the general government. It is conceded that the revenue arising from foreign commerce belongs exclusively to the United States, as well as the power to regulate intercourse with foreign nations. The law of a state which would interfere with either would be unconstitutional and void. The right to make their own regulations concerning them is essential to the existence of the federal government, and the constitution has declared it in terms which leaves little to be supplied by inference or implication. If the acts of the legislature, under consideration, came in conflict with the powers of Congress to lay duties upon imports, to regulate commerce with foreign nations and among the states, or any other secured by the constitution, the court, without hesitation, would declare them inoperative and void.

The laws in question impose a tax upon the capital of merchants, without any discrimination between wholesale and retail dealers, except the classes would make such discrimination. This tax can not be admitted to come within the idea of a duty upon imports, nor can it be discovered that its operations can interfere with the

Raguet *v.* Wade.

powers of Congress to regulate commerce. It is purely a police regulation, affecting the consumer alone. The amount of tax upon the capital thus employed bears a just proportion to that assessed upon land and almost every species of property within the state. It can no more affect importations or interfere with commercial regulations by the United States than a tax upon land or bullocks could be deemed a duty upon exports. The state power to tax must be taken with the limitation only that it be not an impost, or duty upon imports or exports, and that it does not conflict with the powers of Congress to regulate commerce.

It is, with these exceptions, an unlimited, sovereign power. The legitimate exercise of this authority is one thing; the abuse of it is a different question. If a state, in a fit of political phrensy, should lose sight of its duty, as a constituent part of the general government, and levy a tax upon the capital of merchants, so as to amount to a prohibition of foreign commodities, and destroy the revenue of the general government, this would be most clearly an interference with *the powers of Congress to regulate commerce, [114 and such a law would not only be repugnant to the principles of the constitution, but void, on the grounds that it would be a manifest act of tyranny and oppression.

This is not, however, the character of the tax under consideration, nor has it the remotest tendency to bring about such a result. So, an insupportable tax upon bullocks, or the land upon which they must be grazed, may be imposed by a state so as wholly to prevent the exportation of beef. This possible abuse of power ought not to furnish a constitutional objection to its being exercised in a just and reasonable manner, for the legitimate ends and objects of the local governments, and the maintenance of that part of the sovereign power with which they are intrusted by the constitution. When such unjust and oppressive measures shall be adopted in state legislation, as their powers are not supreme, "they must yield to that which is supreme." The highest judicial tribunal in the Union must determine this, and they will fearlessly determine it, when such a law of the state shall be presented. The judicial department of the government, as cases arise, must determine the line between the municipal powers of the states, and the commercial powers of the Union.

No doubt the limited powers of the states may have occasionally, through inadvertence, or temporary popular excitement, been

transcended in legislation; but the power exists with the judiciary to prevent the effects of these dangerous collisions, and it is on the exercise, the independent and fearless exercise, of this power, that the government *has depended* for its continuance, and *must depend* for its perpetuity. To pronounce these laws unconstitutional, because by possibility they may, in some very remote degree, affect importations, or the operations of commerce, would be to yield the principle that a state has not a right to tax property within its jurisdiction for its own support. It would be surrendering the portion of sovereignty reserved at the formation of the constitution, and acquiescing in becoming a consolidated government. These laws impose no impost or duty upon imports. The tax is upon capital, just and equitable, upon abstract principles; indispensably necessary to be laid for the credit, faith, and interest of 115] the state; conflicting with no *provision of the constitution or law of Congress; and interfering with no power to regulate commerce, either foreign or among the states. It is believed these views do not oppose any principle decided by the Supreme Court of the United States, but, on the contrary, are sanctioned by the general admissions and reasons, where similar points have been under discussion and consideration. To preserve the balance between the powers of the general and state governments, the end and object of both must be kept in view. Mist, if not darkness, is upon the line which marks the division of the sovereign power.

The rights of both must depend upon the patriotism and good sense of the citizens, and the mutual forbearance of their agents, as much as upon any distinct, visible constitutional boundary.

The demurrer is sustained.