This case was referred to the Court of Errors, and was heard in that Court in May, 1866, with the case of The State vs. Carew, 13 Rich. 498. It was kept under consideration until the present term, when
The opinion of the Court was delivered by
Munro, J.
In the cases of The State vs. Carew, Sheriff, and Sharlock vs. Rivers, decided at the May Term of this Court, and reported in 13 Rich. 498, it was held that the *134 Act of 1861, and known as' the “ Stay Law,” so far as it was intended to apply to contracts made antecedent to its enactment, was void, because of its repugnancy to that provision of the Constitution of the United States, as also of this State, which prohibits the State from passing laws impairing the obligation of contracts. This case was also argued at the same time, but has been held under advisement until the present term, so that I now proceed to announce the judgment of the Court therein.
In the cases of The State vs. Carew and Sharlock vs. Rivers, the contracts, as we have seen, were entered into prior to the passage of the Act of 1861, while in this case the contract was made some considerable time subsequent to its enactment; so that the main question made by the grounds of appeal, and the one I prop'ose first to consider, is, whether the constitutional provision in question applies to future as well as to antecedent contracts.
There can be no doubt but that the power to regulate civil contracts resides in every government of laws, and but for the constitutional provision which interdicts the States from passing any laws impairing their obligation, their authority over every description of contracts would have been wholly unrestricted. So that the question recurs, Does the constitutional inhibition extend to all contracts without regard to the time of their execution ? or is it restricted to a particular class of contracts, namely, such contracts as were in existence at the passage of the law ? In other words, does the validity of the State law depend upon the fact whether the contract precedes or succeeds the law in point of date ?
But before proceeding farther on this branch of the case, there is a preliminary question it is proper should first be disposed of, namely, whether the effect of the decision in the cases of The State vs. Carew and Sharlock vs. Rivers was to render the Act of 1861 void ab initio; in other words, may a law be constitutional in part, and in part unconstitutional ? *135 In Ogden vs. Saunders, 12 Wheat. 295, Thompson, Justice, says: “ It was not denied in the argument, and, I presume, cannot be, that a law may be unconstitutional and, of course, void so far as it has a retrospective application to past contracts, and valid as applied prospectively to future contracts.” And Trimble, Justice, in the same case, at page 313, said: “ A law may be constitutional in part, and in part unconstitutional.” And in Goulding vs. Prince, Wash. C. C. R., page Washington, Justice, remarks: “It may be proper to premise that a law may be unconstitutional, and of course void, in relation to particular cases, and yet valid to all intents and purposes in its application to other cases, but varying from the former in particular circumstances.” In Tupper vs. McGin, 3 Gray, 32, it is said: “When a statute has been passed by the Legislature under all the forms and sanctions required to the making of laws, some part of which is not within the competency of the legislative power, or is repugnant to any provision of the Constitution, such part thereof shall be adjudged void and of no avail, while all other parts of the Act, not obnoxious to the same objection, will be held valid and have the force of law.” See also Bank of Hamilton vs. Dudley's lessee, 2 Peters, 526, and Sedgwick on Con. and Stat. Law, 489, where a summary of all the authorities on the subject will be found.
I now propose to resume the consideration of the main question in the case — that is, whether the constitutional inhibition applies to future as well as to past contracts ?
While it is very manifest that the Constitution itself furnishes no clue to the solution of this question, inasmuch as it makes no distinction whatever between past and future contracts, but simply declares, in general terms, that no State shall pass any law impairing their obligation; it is, however, equally manifest that for more than half a century, in almost every instance wherein this clause of the Constitution has been drawn into controversy before the judicial tribunals of *136 the country, Federal or State, the distinction between these two classes of contracts has been uniformly recognized and acted upon. So that the rule in question may be said to be one of purely judicial interpretation; and while it restricts the constitutional provision to laws affecting antecedent contracts, it leaves future contracts to 'occupy the same position they did previous to the adoption of the Constitution — that is, subject to the control of the State governments.
Whether this construction which has been placed upon the clause in question is in strict accordance with the intention of its authors, is a question that should ho longer be regarded as open to contestation, for, however debatable originally, after so long and so uniform an acquiescence in its correctness, and sustained as it is by a series of judicial adjudications, national as well as State, of almost unexampled unanimity, all the consideration should now be accorded to it that is due to an established principle of constitutional law.
And I would here take leave to add, that but for this principle of confining the constitutional inhibition to laws affecting antecedent contracts, it would be utterly impossible to sustain the constitutionality of a single insolvent debtors law in the country in reference to posterior contracts. Once discard it as untenable, and eo instanti, you pronounce a sentence of condemnation upon the insolvent laws of every State in the- Union.
I now proceed to cite a few of the leading decisions, both Federal and State, involving a construction of the clause of the Constitution under consideration, in order that we may see the foundation upon which the distinction in question is made to rest, together with the arguments employed to sustain it.
Among the first of the cases, if not the very first, involving a construction of the clause in question, that was brought before the Federal judiciary, was the case of Sturgis vs. Crowningshield, 4 Wheat. 122. This case came before the *137 Supreme Court of the United States in the year 1819; and one of the questions involved in it was, whether an insolvent law of the State of New York, enacted subsequent to the date of the contract upon which the action was founded, and under which the defendant had obtained his discharge,’ was void for its repugnancy to the constitutional provision in question ? And the Court held the law to be void, because of its manifest tendency to impair the'obligation of the contract within the meaning of the constitutional provision.
Prior to the decision of this case, it was generally supposed that the constitutional interdict" extended to all contracts, future as well as past; and although the question, as to the distinction between these two classes of contracts, did not ’necessarily arise in the case, the Court, nevertheless, took occasion to announce á doctrine that has had no little influence upon the jurisprudence of the country, and from which the distinction between past and future contracts may be fairly deduced. The doctrine to which I allude will be found at page 208, and is in these words: “ The Court is of opinion that, since the adoption of ,the Constitution of the United States, a State has authority to pass a bankrupt law, provided such law does not impair the obligation of contracts, within the meaning of the Constitution, and provided there be no Act of Congress in force, establishing a uniform system of bankruptcy, conflicting with such law.”
Now, if it be conceded that the States possess authority to pass bankrupt laws, so long as the power vested in Congress by the Constitution remains in a dormant state, and provided such laws do not impair the obligation of contracts within the meaning of the Constitution; and seeing that the effect of a bankrupt or insolvent law, acting upon antecedent contracts, is to impair their obligation, consequently is in direct conflict with the constitutional interdict; unless future contracts are exempted from the constitutional prohibition, this conceded authority, on the part of the States, to pass bankrupt laws, *138 would be worse than a mockery; and for tbe very obvious reason, there would be nothing left for a State bankrupt or insolvent law to act upon.
Some eight or ten years after the case of Sturges vs. Crowninshield had been decided, this clause of the Constitution was again brought under review, before the same Court, in the case of Ogden vs. Saunders, supra, and again subjected to an elaborate investigation; and among other points there ruled, the following doctrine was maintained by a majority of the Court: that a State insolvent law, acting upon future contracts, was not in conflict with the constitutional provision. At page 304, Thompson, J., says: “The great principle asserted no doubt is, as laid down in Sturges vs. Crowninshield, the inviolability of contracts; and this principle is fufly maintained by confining the prohibition to laws affecting antecedent contracts*.” And in the more recent case of Bronson vs. Kenzie, 1 How. 311, Chief Justice Taney, in speaking of the Illinois statutes, remarks: “ Mortgages, and mortgages are contracts, made since the passage of .these laws, must, undoubtedly be governed by them; for every State has the power to prescribe the legal and equitable obligation of a contract to be made and executed within its jurisdiction. It may exempt any property it thinks proper 'from sale for the payment of a debt; and may impose such conditions and restrictions upon the creditor as its judgment and policy may dictate. And all future contracts would be subject to such provisions; and they would be obligatory upon the parties in the Courts of the United States, as well as in the Courts of the States. We speak, of course, of contracts made and to be executed in the State.”'
And here it may be well to note, that this exposition of the fundamental law is not without contemporaneous testimony to sustain it, as’will be seen by reference to the celebrated ordinance for the government of the territory northwest of the Ohio river, passed by the old Congress, on the 13th of Jan- *139 nary, 1787, most of the members of which were also members of the Convention that framed the Constitution. By one of the. fundamental articles, it is provided that, “in the joint prosecution of rights and property, it is understood and declared that no law ought ever to be made, or have force in the territory, that shall in any manner interfere with or affect private contracts or engagements, bona fide, and without fraud, previously made.” So much for the Federal authorities on this branch of the case. I now propose to cite a few authorities from the State Courts, in order that we may see how the question has been treated by them. In Blanchard vs. Russell, 13 Mass. R. 16, Parker, Chief Justice, said: “A law which is in force when a contract is made cannot be said to have the effect of impairing its obligation; for the contract being made under the law, it is presumed to be made in reference to it, and the parties to it are legally cognizant of it at the time. The contract in such cases is not impaired by the law, for the law is a part of the contract.” And, in a much more recent case, the same Court, in the case of Marsh vs. Pitman, 3 Gray, 562, after an elaborate review of all the authorities on the subject, Federal and State, announces the following doctrine: “That the power to pass a bankrupt law is not exclusive in Congress; that the exercise of that power by the States, as to future contracts, does not impair their obligation.” In Mather vs. Bush, 16 Johns. R. 233 — a case, by the way, that was decided the same year (1819) that Sturges vs. Orowninshield was, and shortly after the judgment in that case had been announced — Spencer, Chief Justice, says: “ That citizens of the same State, entering into contracts, are to be understood as making them in reference to the existing laws; that the contract shall be governed or modified by such laws; and that where the discharge of an insolvent debtor is from a contract made subsequent to the passage of the law, such law is not in conflict with the constitutional inhibi *140 tion.” And in the same year (1819) our own case, of Alexander vs. Gibson, 1 Nott & McC. 481, was decided, in which the same doctrine in reference to our insolvent laws is substantially announced.
The effect of a discharge under our insolvent Acts, and which, by the way, partake much more of the nature of bankrupt than of insolvent laws, is to discharge the debtor from all judgment and suing creditors, and such creditors as may be willing to accept a dividend of his estate.
These authorities, to which many more might be added, are full and express to the point, that all contracts are to be understood as being made in reference to the existing laws, and subject to such conditions and restrictions as the law-making department of the Government may see proper to impose upon the contracting parties; and that such laws are in no respect repugnant to the constitutional provision in question.
But, without pursuing the subject further, it is deemed sufficient to say, that of a bankrupt or insolvent law — either of which, as we have seen, intrinsically implies the complete nullification of almost every legal obligation to which the debtor is a party — while acting solely upon future contracts, does not infringe upon the constitutional inhibition. We may safely venture to hold that the Act under consideration, and known as the Stay Law, in its application to contracts of a similar description, is, to say the least of it, alike free from the charge of repugnancy to the constitutional interdict.
And here it may be proper to notice what is stated, both in the circuit report and in one of the grounds of appeal, that at the time the contract was made the plaintiff was a citizen of another State. It is true that, upon the argument of the case, this ground was waived by the appellant’s counsel. But, assuming it not to have been waived, seeing that the contract was made and was to have been executed in this State, it is clear, both upon principle and authority, that it could not *141 have availed the appellant. See Clay vs. Smith, 3 Peters, 411; Betts vs. Baglay, 12 Pick. 579.
The remaining grounds of appeal may be considered together : the first of which is, that the affidavit was sufficient to bring the case within the provisions of the Act of 1861; and the other is, that the action, being one sounding in damages, was not within the provisions of the Act. As regards the affidavit, it is enough to say that, in point of substance, it was wholly insufficient to bring the case within the second section of the Act, and was even more objectionable than was the affidavit in the case of Hagood vs. Fraser, 1 McCord, 511; and in regard to the remaining ground, the form of the action, the first section of the Act is in these words: “ That it shall not be lawful for any officer of this State to serve or execute any mesne dr final process of any of the Courts of this State for the collection of money.”
It is true that, technically speaking, the action of covenant, the form of action here, is an action to recover damages for the breach of a contract under seal. But what, it may be asked, shall be said of the action of assumpsit ? It, also, is an action to recover damages for the breach 'of a' contract, not under seal, however, but one resting in parol. Now, if covenant must be excluded from the,provisions of the Act, because it is not an action "for the collection of money,” but one sounding in damages, no good reason can be assigned why assumpsit should not also be excluded.
The obvious effect of excluding both these forms of action would undoubtedly be to render the provisions of the Act utterly nugatory.
But, we think, the construction contended for is wholly inadmissible ; for, in looking at the entire scope and tenor of the Act, and the objects it was designed to accomplish, we are satisfied the only forms of action that were intended to be excluded are actions arising ex delicto.
*142 Upon the whole, we are of opinion, upon all the grounds, that the motion should be dismissed; and it is; accordingly, so ordered.
Dunkin, C. J., Wardlaw, Glover, Inglis, Moses, Dawkins, and Aldrich, J. J., and Carroll, Lesesne, and Johnson, 0. 0., concurred.

Motion dismissed.