Lewis & Clark, for plaintiff.
Wallace D. Wilson, for defendants.

---

284                    **RAILROADS—RECEIVER.**

[Hamilton Circuit Court, January Term, 1888.]

Smith, Swing and Cox, JJ.

RICHARD MATHER ET AL., v. CINCINNATI RAILWAY TUNNEL CO. ET AL.

1. Creditor May Have Action Against Corporation in Hands of a Receiver.

Where a plaintiff in an action against a railroad company, whose property is then in the hands of a receiver (appointed by the same court), to which action such receiver is not a party, recovers against the company a money judgment, the same is not void or invalid on the ground that for this reason the court had not jurisdiction to render the same. Such judgment is valid as against the company, and will operate as a lien on its lands within the county, and if duly kept alive, may, after the discharge of the receiver, and the return of the property to the company, be enforced against such lands, by a creditor's bill filed for that purpose, against the company and other persons claiming an interest therein.

2. Judgment Lien in One Case not Affected by Nunc Pro Tunc Order in Another Case.

A *nunc pro tunc* judgment made at January term, 1873, as of October term, 1871, can not operate to affect or divest rights acquired by judgment or otherwise between said terms, by persons not parties to such action, and having no knowledge that the judgment was in fact rendered, but not entered at the first term.

3. Reorganization Act Invalid as to Creditors not Consenting to Proceedings.

The act of April 7, 1863 (60 O. L., 55), is so far as it provides that the re-organization proceedings therein mentioned shall apply to the debts of a railroad company contracted before its passage, and gave to two-thirds of the creditors of the company the right to determine how the said claims should be adjusted, and that when the terms thereof are complied with, the original debt is cancelled, and without any reservation of the rights of said creditors not consenting thereto, and not parties to the action in which the proceedings were had, is invalid, as impairing the obligations of their contracts.

4. Defense to the Debt Should Have Been Interposed in Original Action.

The proceedings under this statute having been entered as of October term, 1871, and the judgment of plaintiffs sought to be enforced in this case having been rendered at December term, 1871, on a contract made before the passage of such reorganization

statute, if such proceedings constituted a defense to the said action of plaintiff, or there was any other defense thereto, they should have been pleaded therein, and can not now be interposed as a defense to the action.

APPEAL from the Court of Common Pleas of Hamilton county.

SMITH, C. J.

The counsel of the defendant company urges and claims that under the pleadings and evidence in this case, the plaintiffs are not entitled to the relief sought, for the reason, that the judgment which was rendered in their favor against the Dayton & Cincinnati Railroad Company (and which the present action, in the nature of a creditor's bill, seeks to enforce against the defendant herein, as the successor to the D. & C. R. R. Co.) was wholly void, because the superior court of Cincinnati, in which it was rendered, had no jurisdiction in the action, as the property of said company was then in the hands of a receiver, and he was not a party to the suit.

No authority has been cited to us in support of this proposition, and we know of none that will sanction it. It may be conceded that a court which has appointed a receiver to manage the affairs and property of a corporation, will not allow him to be sued as such, without the leave of the court, and by attachment for contempt, or otherwise, may require the party bringing the suit to dismiss it. But we suppose the corporation itself is still liable to an action, and if no good defense be interposed, that a judgment may be rendered therein against it. How 't shall be satisfied, and whether it becomes a lien on the real estate of the corporation within the county, as in other cases, notwithstanding the same is under the management of the receiver, may be more doubtful, but we are of the opinion that the lien would so attach.

In this case the land, the sale of which is sought, is in this county, and was the property of the D. & C. Railroad Company at the time of the rendition of the judgment. It has been kept alive by the issue of executions from time to time, and on one of these executions a levy was made upon it. It could not properly be sold without a proceeding to marshal the liens and having all parties claiming an interest in it before the court.

Another claim of counsel for the defendant company is, that the judgment in favor of the plaintiffs which they now seek to enforce, was rendered December 20, 1871, and the lien on these premises did not attach (if it attached at all), until the first day of that term, viz.: the 1st Monday of December, 1871, and that in the same superior court, at the January term, 1873, in the case of Donner v. D. & C. R. R. Co. et al., it was ordered that a *nunc pro tunc* entry be made as of the first day of the October term of said court, 1871, by which all the property and estate of said D. & C. R. R. Co., of every kind, should by the receiver (who had been appointed in that case), be turned over to the Cincinnati Tunnel Railway Company, free from the claims of all persons against said first company, and therefore that on the rendition of plaintiffs' judgment, the said D. & C. R. R Co. was not the owner of the property in question, and plaintiffs by their judgment and levy acquired no lien thereon.

The evidence shows that at the January term, 1873, the said court did make an order which recites that the Donner case had been heard by the court in vacation in August, 1871, and that the judgment was ready for entry on the first day of the October term, 1871, but that it was withheld from entry by the court until the fees of the receiver and certain costs were paid, and that the same being now shown to be paid, it was ordered that a *nunc pro tunc* order be made as of the first day of October term, 1871, and this order finding that two-thirds of the creditors of the D. & C. R. R. Co., of the different classes, had agreed to a certain scheme of re-organization and adjustment of the debts of said company (particularly set out in the order), that the case be dismissed, and the receiver was

directed to turn over all the property of the company "to the officers of said company as re-organized; that the said receiver be discharged; that the said company and its officers, as re-organized, be put in full and complete possession of all the property, rights, franchises and interests of said company, as fully as the said company possessed and held the same prior to the proceedings herein, and that the order of sale of said defendant's property be revoked, and held for naught."

It may be questionable whether this judgment should not have been entered as of January term, 1873, instead of being a *nunc pro tunc* order as of October term, 1871, as the judgment entry itself shows that it had not in fact been rendered at the October term, 1871. But however this may be, and it is perhaps too late to question it, we think the entry of it as of October term, 1873, can not, and ought not in the slightest degree to interfere with the rights of plaintiffs under their judgment, at December term, 1871, there being nothing to show any knowledge on their part of a judgment at October term before, and which indeed was not entered. This we think is clearly the law. On this point see Freeman on Judgments, sec. 66. So far then as that *nunc pro tunc* order is concerned, it did not operate to divest the interests acquired by plaintiffs in the real estate by their judgment at December term, 1871.

The counsel for the defendants further claims that the effect of the re-organization proceedings, and the judgment of the court before spoken of, had under the act of April 7, 1863, (60 O. L., 55), was to wipe out the claim of plaintiffs under the contract on which the judgment was founded, and the judgment rendered thereon, and simply gave to them the right to receive in lieu thereof, a certain amount of the stock of the new company, according to the plan to which two-thirds of the creditors of that class had agreed.

It is admitted that the contract on which the judgment of plaintiffs is founded, was entered into before the passage of the law of 1860, and there is no claim that the plaintiffs, or those under whom they claim, ever entered into the organization agreement.

It is insisted, however, by counsel for the defendant, that the executors of the will of Geo. Mather (with whom in his life-time this contract was made), were parties to the suit in which the foregoing judgment was entered, viz.: the Donner case. It is shown that such was the case. That the executors had another judgment against the D. & C. R. R. Co. which they were seeking to collect, and that suit was consolidated with the Donner case, and the executors in their representative capacity were served with process in the Donner case. It is urged that Richard Mather, who was one of the heirs of Geo. Mather, and Mr. Beresford, who married a daughter of Geo. Mather, were parties in their individual capacity. We find from the evidence that this was not the case, and if they were, then only one of the plaintiffs was a party thereto. But we think it clear they were only before the court in their representative capacity, and that as individuals they were not barred of their right to sue, by reason of their having been parties to that suit.

Did the re-organization proceedings under the law of 1863 wipe out the debt of plaintiff? The claim of the attorneys for plaintiffs as to this is, first, that the law did not purport to apply to debts created before the passage of the act; that it was prospective in its operation; and, secondly, if it was intended to apply to such debts, that in so far it was unconstitutional as affecting the obligation of contracts.

It seems to us, from the language of the statute, that it was the intent of the legislature that it should apply to all debts, whether then in existence, or to be thereafter created. It was made applicable to cases in which judicial proceedings were then pending, or which might thereafter be brought in the courts of the state, and when the property of the railroad company was in the hands of a receiver at that time, and attempted to regulate the mode in which the debts of the

corporation then existing might be arranged and adjusted, as two-thirds of the various classes of creditors might agree. And in effect it did not in any way reserve to those creditors who did not consent thereto, their original rights, but required them to receive payment in the mode and to the extent that the two-thirds of the creditors might agree upon, or receive nothing.

If this be so, we are further of the opinion that so far as such debts are concerned, viz.: those contracted prior to the passage of the law, that it was not valid. It would seem clear that a statute of a state which attempted to give to a part only of the creditors of a person or a corporation, the right to say and decide that the claims of all the creditors of such person or corporation should be discharged by a payment of a part thereof only, or in a mode wholly different from that stipulated in the contract itself, would, in so far as it related to debts in existence at the passage of the statute, be a violation of the provision of the constitution, as impairing the obligations of a contract, 4 Wheat., 122; 1 Wall., 228.

To the same effect we think is the case of Gilfillan v. Union Canal Co., 109 U. S., 401, so greatly relied upon by counsel for defendants. In that case, which involved the validity of a statute of Pennsylvania, somewhat similar in some of its aspects to our law of 1863, but which provided expressly that the scheme agreed upon by the majority of the creditors should be binding only on those who agreed to it, but fully preserved all the original rights of all those creditors who did not agree to the same, but which also contained the provision that those creditors, who for three months should fail to file a written refusal thereof, should be held to have assented to the same,—the court, while upholding this latter provision as being simply in the nature of a statute of limitations, which the legislature had a right to enact, use this language as to the other point spoken of: "It not unfrequently happens, that compromises and adjustments of conflicting interests become necessary in the administration of such trusts. As in the present case, a very large number of the bondholders sometimes think it is for their own interest, as well as that of their associates, to surrender a part of their rights, and accept others instead, and they prepare and submit for execution an agreement, the object of which is to carry this plan into effect. No majority, however large, can compel a minority, small though it be, to enter into such an agreement against their will, and under the constitution of the United States, it is probable, that no statute of the state, passed after the bonds were issued, subjecting the minority to the terms of the agreement, without their consent, would be valid."

The judgment of the superior court in the Donner case, consummating the re-organization proceedings, was entered as of October term, 1871, and upon this judgment the defendants in this case ground their claim. The judgment of the plaintiffs, now sought to be enforced, was rendered, as has been said, December 20, 1871. If that judgment of re-organization was a defense to plaintiff's action, or the railroad company had any other defense thereto, it should have been set up at that time, and not having been done, it is not now available to defeat a creditor's bill brought to enforce the judgment. Dimock v. Revere Cotton Co., 117 U. S., 559. We think on the law and the evidence, the plaintiffs are entitled to the relief prayed for.

Harmon, Colston, Goldsmith & Hoadly, for plaintiffs.
C. L. Raisin and W. B. Burnett, for defendants.