FRANK W. MERRILL *et al. vs.* JAMES I. BOWLER.

NEWPORT—JULY 28, 1897.

PRESENT: Matteson, C. J., Stiness, Tillinghast, Douglas and Rogers, JJ.

The clause of the constitution of the State which provides that " *The right of trial by jury shall remain inviolate*," means simply that in those proceedings in which a right to trial by jury existed at the time of the adoption of the constitution the right shall continue.

Under Gen. Laws R. I. cap. 274, § 18, the control of the property of an insolvent debtor cannot be taken from him, against his will, and the title to it vested in an assignee for the benefit of his creditors, until his insolvency has been established by verdict of a jury. But when the control and title have been so changed the estate becomes a trust fund, the administration of which is only within the jurisdiction of a Court of Equity.

All that the constitution guarantees as a right is an appropriate remedy for the case ; and a jury trial is not an appropriate remedy for the enforcement of a trust.

One of the most important functions of government is to provide means for the collection of debts, and the enforcement of the performance of contracts.

A State may regulate and control the forms of conveyances, and prohibit such as it may consider contrary to public policy.

The jurisdiction of the court sitting in insolvency cases is that of a Court of Equity, and includes the power of directing issues to a jury in its discretion.

In the constitution of the State there is no limitation upon the power of the General Assembly to legislate on the subject of bankruptcy and insolvency, or to prescribe the mode and terms and conditions in and upon which a debtor shall convey his property for the benefit of his creditors.

The rule requiring a deposit of fifty dollars as a condition of being permitted to file a petition in insolvency, sustained.

PETITION IN INSOLVENCY. Heard on question of the constitutionality of Gen. Laws R. I. cap. 274.

DOUGLAS, J. This is an involuntary petition in insolvency brought by certain creditors, alleging that they hold claims not less than three-fourths in amount of all the debts of the respondent ; that the respondent is an inhabitant of this State and owes debts therein to the amount of three hun-

dred dollars or over, and has within four months prior to the filing of the petition made conveyances of certain parts of his property, with intent to hinder, delay or defraud his creditors ; that while insolvent he has, for the purpose of giving a preference, made a conveyance, mortgage, pledge or transfer of certain of his property ; that he suffered certain of his property or assets to be taken and levied upon by process of law ; and that he has made an assignment for the benefit of his creditors ; and praying that he may be adjudged insolvent, and that such proceedings may be taken in the premises as are provided in chapter 274 of the General Laws of Rhode Island.

The respondent, having been duly cited, comes in his own person and objects to further proceedings on the petition, on the grounds :

1.    That said chapter 274 is unconstitutional and void.

2.    That respondent made a legal assignment for the benefit of his creditors before the filing of the petition, and so much of said chapter as attempts to set aside such an assignment is unconstitutional and void, and there is no property whatever that can be affected by proceedings upon this petition.

3.    That at the time of making said assignment the respondent had not estate sufficient to enable him to comply with the rule requiring a deposit of fifty dollars as a condition of being permitted to file a petition in insolvency, and that said rule is unconstitutional as to such persons as are unable to comply with it.

These objections, raising constitutional questions, were certified to and heard by the full court.

At the hearing the respondent appeared by counsel who, in his printed brief, defined the objections to the law as follows :

1.    There is no provision in the act under which this case is brought (chapter 274, Gen. Laws of R. I.) by which the assignee, in whom are vested the rights of the insolvent, or the insolvent himself, may have a jury trial of the validity of any claim presented against the estate, and the entire act is therefore repugnant to the constitution and void.

2. The provisions invalidating *all* assignments for the benefit of creditors (sections 16, 39 and 51) are unconstitutional and void.

3. The requirement (by rule) of a deposit of fifty dollars as a condition precedent to relief under the act, if valid, takes out of the catagory of acts done in fraud of the act, all acts done by an insolvent by reason of his inability to comply with the rule. And as to such acts of an insolvent the enforcement of the act becomes and is unconstitutional.

In support of the first objection it is urged that a creditor has a constitutional right to try by jury his claim against the estate of the insolvent in the hands of the assignee, and that the distribution of the assigned estate by direction of the court without reference to a jury is taking the debtor's property from his control and giving it to others contrary to the constitution. There is no provision in the constitution of Rhode Island which provides that all controversies regarding property shall be brought in the form of a common law action or be tried by a jury. Art. 1, Sec. 15, provides : "The right of trial by jury shall remain inviolate,"—which means simply that in those proceedings in which a right to trial by jury existed at the time of the adoption of the constitution the right shall still continue. *Crandall* v. *James et al.*, 6 R. I. 144, 148. "The constitution requires simply the conservation, not an extension of the right of jury trial." *Bishop* v. *Tripp*, 15 R. I. 466–469. And it would be a sufficient answer to this objection to say that, at the time of the adoption of the constitution, no provision was made for ascertaining claims against the estate of an insolvent by jury trial between the claimant and the assignee. At the time of the adoption of the constitution an insolvent law was in force in this State, though suspended in its operation by the U. S. Bankruptcy act of 1840. It was enacted January 19, 1828, afterwards repealed and reënacted with some amendments January 11, 1832. It provided for voluntary insolvency only, and its discharge was simply from imprisonment of the debtor's body. This act conferred jurisdiction in insolvency upon the Supreme Judicial Court, "with power to

carry into full effect all the provisions of the act," and the reviving act provided for an appeal to the General Assembly. Section 8 provided : . . . . . "and said assignee or assignees shall also have power to submit any and all claims and demands against said estate or in favor thereof to the final decision of referees, under a rule of any competent court." No provision is made therein for a determination of any issue by jury trial. The assignee is authorized to take upon himself the conduct of actions pending, and this provision is substantially contained in Sec. 25 of the present law.

But it is argued that the claims provable under this act are mostly simple contract claims, and such as are more appropriately the subject of common law procedure. A glance at the plan and scope of the statute will remove this impression. The statute, like every bankrupt or insolvent law, takes away from an insolvent debtor the control of his property, and vests the legal title to it in an assignee in trust for his creditors. This step, if objected to, cannot be had under this act till his insolvency has been established by verdict of a jury. (Section 18.) A jury trial, therefore, stands at the threshold of these proceedings, and no man's property can be taken from him by the act, against his will, except by a jury of his peers.

When the estate has once been taken from him it becomes subject to other rules. It can no longer be reached at common law, but becomes a trust fund, the administration of which is only within the jurisdiction of a Court of Equity. A voluntary assignee cannot be sued by a creditor of his assignor at common law any more than an assignee under this act. The creditor is therefore deprived of no right of action which he possessed against the estate of the debtor, but is only relegated to the proper proceeding to enforce his claim upon what has now become the subject matter of a different jurisdiction. If the act of the law which creates a trust fund of the debtor's property violates the constitution by depriving a creditor of the right to follow it in a court of common law, a voluntary assignment by the debtor does the same thing. All that the constitution guarantees as a right

is an appropriate remedy for the case, and a jury trial is not an appropriate proceeding for the enforcement of a trust. We do not agree, however, with the construction placed upon the provisions of this statute by respondent's counsel which precludes the Appellate Division of this court, sitting in insolvency cases, from directing issues to a jury in its discretion. Its jurisdiction in these matters is that of a Court in Equity. The case is in substance the equitable distribution of a trust fund, and though the mode of procedure in certain respects is modified by the statute, and additional officers of the court are created to facilitate its proceedings, the general powers and instruments of the court are unimpaired. Before the adoption of the constitution, the General Assembly expressly conferred upon the Supreme Judicial Court supervision over voluntary assignees, as a part of its chancery jurisdiction. Act passed January 21, 1837, entitled " An act in addition to an act entitled ' An act vesting chancery powers in the Supreme Judicial Court in certain cases.' "

Section 16 of the act provides, amongst other things, that " Any person, being an inhabitant of this State, shall be adjudged insolvent if he has within four months prior to the filing of the petition in insolvency against him " . . . . " made an assignment for the benefit of his creditors."

SEC. 39. "The assignment shall vest in the assignee " . . . . . " all property conveyed by an assignment for the benefit of creditors made not more than four months prior to the time of the first publication aforesaid."

Section 51 denies a discharge to an insolvent if he has given or suffered to be created a preference, as herein defined, under an assignment for the benefit of creditors or otherwise, which preference has not been surrendered.

In considering these provisions, we construe them as relating to a general assignment for the benefit of creditors. Partial assignments, if made to hinder, delay or defraud creditors, are referred to in other clauses of the act. It will not, certainly, be urged that the legislature may not forbid assignments with preferences, as nearly all the State legisla-

tures have done so without question ; neither can it be successfully argued that the legislature may not prescribe by general law what acts on the part of a debtor shall constitute bankruptcy, or insolvency, and what disposition shall be made of the estate of a bankrupt or insolvent among his creditors.

One of the most important functions of government is to provide means for the collection of debts, and the enforcement of the performance of contracts. So a State may regulate and control the form of conveyances, and prohibit such as it may consider contrary to public policy. Restrictions upon the power to make wills and create trusts are common and proper subjects of general legislation. That the several States of the Union have power to enact bankruptcy and insolvency laws, which are operative within certain limits while no federal bankruptcy law exists, has been settled by repeated adjudications by the Supreme Court of the United States. *Sturges* v. *Crowninshield*, 4 Wheat. 122 ; *Farmers & Mechanics Bank* v. *Smith*, 6 Wheat. 131 ; *Ogden* v. *Saunders*, 12 Wheat. 213 ; *Baldwin* v. *Hale*, 1 Wall. 223. In our constitution there is no limitation upon the power of the General Assembly to legislate on this subject. The quotation made by respondent's counsel rather by implication recognizes the power. Art. 1, Sec. 11, to which he refers, reads as follows : "The person of a debtor, where there is not strong presumption of fraud, ought not to be continued in prison, after he shall have delivered up his property for the benefit of his creditors, *in such manner as shall be prescribed by law.*" Clearly this implies that laws may be enacted prescribing the mode and terms and conditions in and upon which a debtor shall convey his property for the benefit of his creditors. This is all that is done by the sections of the law now under consideration. The statute provides that a general assignment to an assignee chosen by the debtor shall not stand, if a certain number of the creditors within four months ask the court to appoint an assignee acceptable to them, and then to proceed to distribute the debtor's estate in a manner which seems to the legislature to be equitable and

just. Respondent's counsel says: "It is only an assignment by an insolvent debtor which may be set aside without violation of the constitution." But a general assignment by a debtor has been held to be conclusive proof of insolvency. *Morewood* v. *Hollister*, 6 N. Y. (2 Seld.) 309. Indeed the conveyance by a debtor of all his property to an assignee, for the purpose of paying his debts, is a confession that he is incapable of managing his estate so as to fulfill his obligations as debtor, and so invokes the jurisdiction of the law to provide for the management of it, as in the case of an infant or person of unsound mind. The act of making an assignment is a resignation of his duties and responsibilities, which the State may justly make the occasion of assuming control of the debtor's property through regularly constituted instruments. The making of a general assignment is not evidence of insolvency only, it is an act of insolvency itself; for a man who has put all his property out of his hands cannot himself pay his debts as they come due in the ordinary course of business. Says Gardner, J., in *Morewood* v. *Hollister*, *supra*, p. 323: "The execution of such an assignment is of itself an act of insolvency of the most unequivocal character. The debtor thereby voluntarily divests himself of all means of payment, and renders it impossible that his creditors at large should obtain satisfaction of their demands by due course of law. He and they must await the winding up of the trust. If the defendant is chargeable with the necessary consequences of his own acts, when he made up his mind to assign all his property he contemplated insolvency; when he consummated his purpose, he became insolvent in fact."

The third objection to the statute is not properly raised in this case, for the fee required has been paid by the petitioning creditors; but the legality of such fees under the constitution has been fully discussed by this court in *Perce* v. *Hallet*, 13 R. I. 364, where it is said, in the concluding words of the opinion: "In the light of both history and legislative practice, therefore, we think the legitimate conclusion is, that the declaration of the constitution was intended to prohibit, not fees like those prescribed in the fee table, but

gratuities, or exactions, given or demanded for the direct purpose of influencing the course of legal proceedings."

It is difficult to believe that a person so situated as to be unable to raise the deposit required by the rule should have any need of the relief afforded by the act. It is only intended to apply to cases that are of sufficient importance to justify the attention and supervision of the court in their settlement. An honest debtor possessing no estate has ample protection from the laws restricting imprisonment for debt.

The objections must be overruled, and further proceedings had upon the petition according to the statute.

*Samuel R. Honey*, for petitioners.

*Charles Acton Ives*, for respondent.