## CITY MAGISTRATES COURT.

### October, 1918.

## THE PEOPLE ex rel. RUDOLPH LOEWENTHAL v. HENRY LEON HAMMER.

DISORDERLY CONDUCT—ACT OF ALIEN ENEMY IN ANSWERING QUESTION RE-
QUIRED BY FEDERAL SELECTIVE SERVICE LAW.

The act of a registrant appearing before a Local Exemption Board, in answering questions propounded to him from the printed questionnaire to the effect that he claims exemption from military service on the ground that he is an alien enemy and that he is willing to return to Austria and enter the Austrian Army, where the questions are answered in a proper and gentlemanly manner and in an ordinary tone of voice, is an act done under the lawful compulsion of the federal statute, and is not disorderly conduct within sections 1458 and 1459 of the New York Consolidation Act.

GEORGE W. SIMPSON, Magistrate:

The defendant, Henry Leon Hammer, of No. 2118 Bryant avenue, Borough and County of the Bronx, is charged with disorderly conduct. The defendant rests on the People's case. The facts are undisputed. The defendant appeared on September 26, 1918, before Local Exemption Board No. 15, Fulton avenue and One Hundred and Seventy-third street, New York City, and presented his questionnaire, partially filed out, to one Lowenthal, a member of the Legal Advisory Board, who, upon turning to page 6 thereof, question 7, found the answer " yes " written in the blank space provided for the answer to the question, which reads:

" 7. If you are not a citizen of the United States and have not declared your intention of becoming a citizen, are you willing to return to your native country and enter its military service ? " following which there is a blank space under which is printed in small type " yes or no."

Thereupon this colloquy occurred: Lowenthal asked the defendant: " Do you claim exemption from military service?" He said " yes," and being asked: " On what ground? " he said, " I am an enemy alien." Being asked where he came from he said " Austria."

Loewenthal then asked him, paraphrasing question 7, " Are you willing to return to Austria and enter the Austrian Army? " and the defendant said " yes." Thereupon he had the defendant sign his name in the several places on the questionnaire indicated for the purpose, and to the oath on the last page, signed his own name, Loewenthal, and put on a stamp as an Associate Member of the Legal Advisory Board and ordered the defendant's arrest on a charge of disorderly conduct.

Upon his arraignment the presiding magistrate directed that defendant's conduct be brought to the attention of the federal authorities. They subsequently indicated that there was no violation of the Federal Espionage Law or statutes relating to seditious utterances in the premises and suggested that the matter be passed upon and disposed of in a Magistrate's Court on the disorderly conduct complaint.

It appears that the defendant is twenty-one years old and has been in this country about four years and has not declared his intentions of becoming a citizen of this country; that his mother resides in Austria; that the conversation with Loewenthal was had at a table on either side of which the defendant and Loewenthal sat in a room in which there were between thirty and forty persons; that the responses by the defendant to Loewenthal were made in an ordinary tone of voice and that he conducted himself in a gentlemanly manner.

Does the act of the defendant in writing the word " Yes " in answer to the question 7 (in compliance with the printed requirement beneath the space set out therefor that it should be answered " Yes " or " No ") and thus indicating that he stated orally that being a subject of Austria he was willing and desir

ous of returning to that country and entering its military service and fighting against the United States, constitute disorderly conduct under the State statutes defining that charge?

Disorderly conduct is defined by section 1458 and 1459 of the Consolidation Act. Section 1459 reads:

" Every person in said city and county (meaning the City of New York) shall be deemed guilty of disorderly conduct that tends to a breach of the peace who shall in any thoroughfare or public place in said city and county commit any of the following offenses, that is to say:

" 3. Every person who shall use any threatening, *abusive* or insulting behavior with intent to provoke a breach of the peace or whereby a breach of the peace *may be occasioned.*"

This has been interpreted to mean any conduct is disorderly conduct which in the opinion of a city magistrate tends to a breach of the peace. (People v. Foster, N. Y. Law Journal, January 9, 1909, and cases cited therein.)

It is hard to conceive how a young man who has for four years enjoyed the opportunities and experienced the blessings afforded by the democratic institutions of our country should nevertheless harbor a preference and a desire to fight against the United States in the armies of a country where autocratic and despotic institutions prevail, particularly a country that is allied with another (Germany) that has shown itself to be destitute of all the ordinary decencies and moralities in its dealings with other nations and the people of countries its military forces have overrun. Nevertheless the question propounded made necessary a disclosure of such utter repellency, if it in fact existed. Does such a disclosure, made pursuant to a Federal requirement, present an infraction of our State laws of which cognizance may be taken? Let us see.

Article 1, section 8, U. S. Constitution, provides: " Congress shall have power  *  *  *  11. To declare war  *  *  * 12. To raise and support armies  *  *  *  14. To make rules

for the government and regulation of land and naval forces * * * 16. To provide for the organizing, arming and disciplining the militia and for governing such part of them as may be employed in the service of the United States * * * 18. To make all laws which shall be necessary and proper for carrying into execution the foregoing power and all other powers vested by this constitution in the Government of the United States or in any department or officer thereof."

Acting under the foregoing provisions, Congress enacted the Selective Service Law (approved by the President May 18, 1917), together with amendments thereof extending its scope.

Under the provisions of that law, as amended, the President by proclamation, fixed a day of registration of all male inhabitants between the ages of eighteen and forty-five, and promulgated regulations governing the classification of the availability for military service of said inhabitants. Pursuant to these regulations, for the purpose of facilitating this classification there was prepared under the President's direction a form of questionnaire which called upon all persons within ages fixed by the Selective Service Law to furnish the information required by the questions propounded therein. The question No. 7 the defendant was called upon to answer was thus propounded to him pursuant to the Selective Service Law and the regulations and promulgations lawfully made thereunder.

That this particular question was so worded as to call for a statement of fact (if truly answered) which indicated hostility to this country on the part of the registrant because of his being a citizen of and desirous of aiding a country with which the United States was at war did not relieve him from the obligation of answering either " Yes " or " No " in the suggested words of the printed blank.

It may be the purpose of this question was to enable friendly aliens to express a preference to serve in the army of their own country rather than in the army of this country, or it may be

that it had the added purpose of enabling a classifying of enemy aliens so as to determine by the answer of the question the degree of friendliness or hostility of the registrant to this country and furnish a basis for determining whether or not the individual answering should or should not be interned; but whatever the purpose, if the fact be that the registrant honestly answered the question in the affirmative (and nothing before me impugns his honesty), the requirement to make such a disclosure of his hostile state of mind and feelings emanated from and under lawful official Federal compulsion.

Article VI, section 2, United States Constitution, reads: " 2. This constitution and the laws of the United States which shall be made in pursuance thereof; * * * shall be the supreme law of the land, and the judge in every state shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding."

The Supreme Court of the United States has repeatedly held that the Constitution of the United States and laws enacted by Congress in pursuance thereof are paramount and Federal action in the sphere in which it is thus supreme may not be trammeled by State legislation or executive action.

The Supreme Court has further held that whenever the terms in which a power is granted to the Federal government or the nature of the power requires that it should be exercise exclusively by the Federal government, the subject is as completely taken from the scope of State action as if the State had been expressly forbidden to act on it. (McCullach v. State of Maryland, 4 Wheaton 316; Sturges v. Crowninshield, 4 Wheaton 122.)

The raising of armies, the method of their organization, the queries that shall be propounded to registrants in connection with their organization, all come within the express terms (quoted above) of power granted to the Federal government, and, moreover, by their very nature are of such a character

that they must be exercised exclusively by the Federal government. Whenever the Federal government acts in such a field State action is superseded or suspended. (Table's Case, 13 Wallace 397; Gibbons v. Ogden, 9 Wheaton 1.)

It follows from the foregoing that anything required to be done under the Selective Service Law, and consequently lawful thereunder, cannot because of the paramouncy of that law be held to be unlawful under an interprepation of a State law such as is here sought to be invoked. (Art. VI, sec. 2 U. S. Const.)

Accordingly I am constrained to hold that the disclosure of the defendant's state of mind, of hostility to this country, made under the lawful compulsion of a paramount Federal statute, precluded holding the act of disclosure thus required of the defendant to be a violation of the State statutes defining disorderly conduct or as constituting an unlawful act of which I can take cognizance, although the same disclosure volunteered or made known in response to questions not propounded under official sanction would, in my opinion, be properly held to be disorderly conduct as being of such a character that a breach of the peace " may be occasioned " by it.

The defendant's act being lawful under the Selective Service Law, it did not (being indulged in an orderly manner) become unlawful under any legal interpretation of the State statute.

However, I direct that the Federal authorities be advised of my disposition of this case in order that they may determine whether or no the defendant is a proper subject for internment, and arrange to keep him either in custody or under the surveillance, to the end that he may be promptly deported as an undesirable at the end of the war, as this country should not be burdened by the presence of individuals of this type.

The complaint is dismissed and the defendant discharged.