MARY L. STEELMAN, BY HER NEXT FRIEND, v. NATHAN
P. MATTIX ET AL.

1. Our state insolvent laws are not bankrupt laws, and are not suspended
by the passage of the national bankrupt act. *Query.* Whether they
would be suspended if they were bankrupt laws?
2. In a case not provided for by the national authority, the force of state
legislation is undisturbed, for no conflict can arise between the two
jurisdictions.
3. If our state insolvent laws are suspended, a bond given under the act
of April 15th, 1846, (*Nix. Dig.* 386,) is obligatory.

In debt.   On demurrer to declaration.

Argued at June Term, 1873, before BEASLEY, Chief Jus-
tice, and Justices DALRIMPLE, DEPUE and VAN SYCKEL.

For the plaintiffs, *F. F. Westcott.*

For the defendants, *P. L. Voorhees* and *A. Browning.*

The opinion of the court was delivered by

VAN SYCKEL, J.   This suit was instituted upon a bond
executed by Nathan P. Mattix and his sureties, under the
second section of the act entitled, "An act abolishing impris-
onment on civil process in certain cases." *Nix. Dig.* 386, *p.*
9.   One of the breaches assigned in the declaration is, that the
said Mattix, after he was refused his discharge under the in-
solvent laws of this state, did not surrender himself to the
sheriff, out of whose custody he had been liberated.

To this declaration there is a general demurrer, upon the
ground that the bond is void, because the act under which it
was given was superseded or suspended by the national bank-
rupt law.

It is admitted that the authority given to congress to es-
tablish uniform laws on the subject of bankruptcy, does not

restrict the power of the states over the same subject, until the power of congress is actually exercised.

Whether the enactment of the national law *ipso facto* nullifies the operation of state laws, or whether proceedings may be instituted and continued under state laws, until proceedings are actually taken under the federal law, are questions which have been much discussed, but they are not necessarily involved in this case, and, therefore, no opinion will be expressed in regard to them.

The subject is divisible into bankrupt and insolvent laws, but the difficulty of defining with accuracy what belongs to the one and not to the other class, is recognized in the principal case, *Sturges* v. *Crowningshield*, 4 *Wheat.* 122.

The line of separation may be an arbitrary one, and without attempting to establish any rule by which laws of this character may be classified, it will be sufficient if we can say with confidence that the act now in question is so far removed from the line of demarcation, that its character is not doubtful.

It is an act to abolish imprisonment on civil process in certain cases. It applies to the single instance of involuntary confinement, and its aim and purpose is simply to liberate the person. It has neither the scope, nor does it subserve the end of a bankrupt law. The person who invokes its aid must not necessarily be bankrupt or insolvent—he need only be incarcerated on civil process against his will.

It is true that his property is sequestered and distributed among his creditors, but so it is under the attachment act, the assignment act, and the act applying to the estates of decedents; the distribution of the property is merely incidental, and does not discharge the debt. This was not a proceeding in bankruptcy, and would no more come in conflict with the law of congress than a suit prosecuted to judgment and execution; in either case the assignee in bankruptcy would take the debtor's property out of the control of the state court. The power given to congress over this subject is plenary, and when it has been exercised, all state legislation, and all pro-

ceedings in state courts, which actually come in conflict with it, must yield to the paramount authority of the general government. It would seem necessarily to result, that when congress has constitutionally passed a law upon this subject, state law, designed to accomplish substantially the same purpose, must fall.

Uniformity cannot exist with jurisdiction in the state and federal courts in operation at the same time over the same subject matter, to secure substantially the same result.

The fact that under certain conditions the state courts are vested with authority to control and administer the debtor's property for the benefit of creditors, is not, of itself, conclusive as to the validity of the state law.

It is held that a state insolvent law, which supplies the mode of administering insolvent estates, under such assignments made by debtors for the benefit of creditors as would be valid at common law, without the aid of any statute, and which could be enforced by a court of equity like any other trust, is not suspended. *Hawkins' Appeal*, 8 *Am. L. R.* 205; *Beck* v. *Parker*, 65 *Penn.* 262.

So when a bankrupt act expressly excepts a class of cases, it must have been the intention of congress not to interfere in such specified class with the laws of the several states. *In re Wintermitz*, 18 *Pittsburgh L. J.* 61.

This recognizes the corollary that in a case not provided for by the national authority, the force of state legislation is undisturbed, for no conflict can possibly arise between the two jurisdictions.

Our state law in question is of this class, where a debtor, prior to the institution of proceedings in bankruptcy, is imprisoned on civil process issued out of the state court, the federal law furnishes no means of discharging him from confinement, and, therefore, if this state law is held to be suspended, the prisoner is without relief, and subject to lifelong incarceration. When the federal law is put into actual operation, the superior title of the assignee in bankruptcy to the

Steelman v. Mattix et al.

property of the debtor, would assert itself in the same way, that it would prevail over the title of the sheriff acquired by virtue of his executions, in certain specified cases.

But if our insolvent laws shall be regarded as bankrupt laws, and it is held that they are superseded or suspended, the act under which this bond is given, is still in full force, and the bond is obligatory. Under that construction it may be questioned whether, while the act of April 15th, 1846, remains upon our statute book, the sheriff could refuse to accept the bond. The condition is, that the debtor shall apply for the benefit of the insolvent laws of this state, and if he fails to be discharged, shall surrender himself to the officer. The undertaking is in the alternative, either to obtain a discharge under a law which is no longer effective, or to return to the condition from which he was released. Failing in the former, he must perform the latter; this obligation is neither to do·that which is unlawful or impossible. When application is made to the state court for a discharge, the debtor would be remanded to custody, either because he did not comply with the provisions of the state law, or for the reason that the state court had no power in the premises.

As the pleadings stand, the defendant has failed to comply with the condition of his bond, and the demurrer, therefore, should be overruled, with costs.