CASE No. 1083.

## MOORE v. HOLLAND.

1. A note was executed in 1867 for $2,000, payable at one day, with interest at sixteen per cent. per annum, and, at the same time, judgment was confessed thereon for the same amount, with interest at the same rate; judgment was entered five days afterwards for the debt so confessed, without specifying any rate of interest, and execution of *fi. fa.*, in usual form, was issued. *Held*, in action by junior lien creditors of the defendant to the confession, that the rate of interest due on the judgment was regulated by the act of 1866, § 2, (13 *Stat.* 439,) and not by the agreement of the parties, and that the judgment bore only seven per cent. interest.

2. Payments made and entered as credits "in part of this case," must be so credited by the court, and cannot be applied in extinguishment of the higher rate of interest stipulated for in the confession.

3. Section 313 of the Code of Procedure, adopted in 1870, declaring that final judgments thereafter rendered, should not, of themselves, constitute a lien upon real or personal property, but that such lien might be obtained by levy, &c., did not impair the obligation of contracts entered into prior to its passage.

4. A., having become the purchaser of a tract of land at sheriff's sale, transferred his bid to B., under agreement that any profit made on a resale should be credited on a debt then due by A. to B.; and shortly afterwards, B. resold at a profit, partly for cash and partly on a credit secured by mortgage. *Held*, that A. was entitled to a credit of this profit at the date of the resale, there being no proof that the balance due on the mortgage was not amply secured.

Before MACKEY, J., Edgefield, April, 1880.

This was an action commenced in September, 1878, by Mrs. S. E. Moore and others, the heirs at law of W. N. Moore,

deceased, and by Mary P. Lake and others, the heirs at law of Thomas Lake, deceased, against Bennett Holland, assignee of J. M. Richardson; Lycurgus Charlton, Judge of Probate, and successor in office to D. L. Turner; R. G. M. Dunovant, M. C. Taggart, Butler & Youmans, J. L. Addison and A. J. Norris, assignees of B. F. Yoe; M. A. Markert, and J. T. Gaston, sheriff of Edgefield county. Taggart was the owner of an interest in the Yoe mortgage. The case is fully stated in the opinion.

*Messrs. Norris & Folk*, for appellant Holland.

The note was merged in the judgment. *Freem. on Judg.* § 217; 7 *Wait's Act. & Def.* 320. But the confession of judgment was, itself, a contract between the parties, and bore the interest agreed upon. 8 *S. C.* 202; 9 *Rich. Eq.* 56; 3 *Gray* 411; 16 *Cal.* 373; 2 *Sandf.* 402; 4 *Wait's Act. & Def.* 184; 5 *S. C.* 125; 15 *Wall.* 610; 36 *N. J.* 390; 8 *Rich.* 164. Where there is no agreement, judgments bear interest at 7 per cent. under the statute; but parties may stipulate that a judgment shall bear a higher rate, and such agreement will be lawful. 2 *N. & McC.* 40; 9 *Rich.* 80. Applying the principles of these cases to this case, and the contract of the parties must be enforced, because their rights are not restricted by the act of 1866. See, further, 6 *Am. Dec.* 190; 2 *Nev.* 199; 96 *U. S.* 53; 2 *Hill* 408; 3 *Rich.* 125; 1 *Strob.* 115; 14 *S. C.* 341. Where contract is made in another State, the higher rate of interest which obtains there is allowed here. 7 *Rich. Eq.* 395. That parties might contract for any rate of interest, see *Association* v. *Thompson*, MS. Dec. No. 860. The proof is conclusive that there was such an agreement in this case. At least, the payments should be applied to the interest contracted for, as the evidence shows that it was paid with such an understanding; and, if the receipt does not so express it, the parol testimony so explains it. 7 *Wait's Act. & Def.* 445; 59 *Pa. St.* 59; 7 *S. C.* 233; 9 *S. C.* 92.

*Mr. R. G. Bonham*, for plaintiffs.

*Mr. B. W. Bettis, Jr.,* for Markert, appellant.

*Mr. J. P. Carroll,* for R. G. M. Dunovant.

September 20th, 1881. The opinion of the court was delivered by

SIMPSON, C. J. To a proper understanding of the questions of law involved in this case it will be necessary to insert the Circuit decree of Judge Mackey. This is the more important as a full statement. of the facts of the case will also be found in this decree compactly stated.

It is as follows:

### DECREE OF COURT.

On the 4th of January, 1858, R. G. M. Dunovant having been duly appointed guardian of Mary C. Brooks, who afterwards intermarried with George B. Addison, entered into bond to the then commissioner in equity in the penal sum of $25,000, conditioned for the faithful performance of his trust as guardian, with Thomas Lake, W. N. Moore and Z. W. Carwile as sureties thereto.

On the 21st May, 1868, the said George B. Addison and wife filed their bill in the Court of Equity against the said R. G. M. Dunovant, as guardian, and his sureties, praying for an account and settlement. And on the 11th of March, 1870, a decretal order was passed in the said case in favor of the said George B. Addison and wife for the sum of $2,000.

On the 28th December, 1873, the said George B. Addison and wife assigned the said decree to Martha C. Brooks, and the same was, on the 2d January, 1878, assigned, one-half to the heirs at law of Dr. Thomas Lake, and the other half to the heirs at law of W. N. Moore, deceased.

The referee reports as due on said decree, on the 1st October, 1879, the sum of $2,403.62, of which sum $1,955.55 is principal, bearing interest, and the balance accumulated interest and costs.

On the 25th February, 1867, the said R. G. M. Dunovant executed his bond to James M. Richardson, whereby he covenanted, one day after the date thereof, to pay to the said James

M. Richardson or bearer the sum of $2,000 in currency, with interest thereon from date, at the rate of sixteen per cent. per annum.

Suit was brought on said bond on the same day, to wit, the 25th February, 1867, by James M. Richardson; and on the declaration the following endorsement was entered by the said R. G. M. Dunovant, to wit:

" I confess judgment in this case to James M. Richardson, the plaintiff, in the sum of $2,000, with interest thereon from the 25th day of February, A. D. 1867, in currency, at the rate of sixteen per cent. per annum ; and consent that judgment be entered up and execution be issued against me, without delay, this 25th February, 1867.

" R. G. M. Dunovant.

" Test.—J. F. Cason."

Judgment in said suit was signed and enrolled on March 2d, 1867, in the following words, to wit:

"And the said R. G. M. Dunovant, the defendant, comes and defends the wrong and injury when, &c., and says he cannot deny the action of the said James M. Richardson, the plaintiff, nor, but that the said writing obligatory is the deed of him the said defendant, but that he owes to the plaintiff the said sum of $2,000 above demanded, in manner and form as the said plaintiff hath above thereof complained against him. Therefore it is considered that the said plaintiff, James M. Richardson, do recover against the said R. G. M. Dunovant, the defendant, his said debt, and also $16.12½, for his damages which he hath sustained, as well on occasion of the detaining the said debt as for his costs and charges by him about his suit in this behalf expended, by the said court, before the justices thereof, now here adjudged to the ——— ——— and with his assent ; and be the said defendant in mercy, &c.

"Abney & Wright,<br>"*Plaintiff's Attorneys.*"

*Fi. fa.* was issued on the said judgment on the said 2d March, 1867. The said execution and judgment were assigned to

Bennett Holland by the said James M. Richardson. The sums of $562 and $960 were paid on the said judgment on the 5th January, 1869, and on the 5th February, 1872, respectively, and the receipt thereof acknowledged on the sheriff's books in the following words, to wit:

"Received of the defendant $562 in part of this case, 5th January, 1869.

"BENNETT HOLLAND."

"Received of the defendaut $960 in part of this case, 5th February, 1872.

"BENNETT HOLLAND."

The referee reports the sum of $1,745.47 due on the 1st October, 1879, of which $1,136.60 is principal, bearing interest.

On the 25th of December, 1871, R. G. M. Dunovant having been appointed guardian of his three children, William L., Robert L., and Carrie P., executed his bond to D. L. Turner, then Probate judge, in the penal sum of $7,000, conditioned for the faithful discharge of his trust as guardian, and on the same day, to supply the place of personal sureties to the said bond, he executed to the said D. L. Turner, Judge of Probate, a mortgage of the following described tract of land, to wit:

"All that tract of land containing four hundred and thirty-seven and one-half acres, more or less, bounded by lands of James Cresswell and others, said lands having been conveyed by Whit. Brooks to the said R. G. M. Dunovant, the 29th of October, 1851. Also, a portion of the Anna Williams tract, containing three hundred acres, more or less, to be cut off adjacent to tract above described."

This mortgage was not recorded until the 21st of December, 1876.

The referee reports due on this claim on the 1st of October, 1879, the sum of $2,241.48, of which amount the sum of $1,637.05 is principal, bearing interest.

On the 9th day of June, 1874, a verdict was rendered against

R. G. M. Dunovant, in the Court of Common Pleas, in favor of the defendants, Butler & Youmans, but judgment thereon was not entered up until the 30th of January, 1877.

The referee reports the sum of $286.46 due on said judgment on the 1st of October, 1879, of which sum $208.90 is principal, bearing interest.

On the 25th of January, 1875, the said R. G. M. Dunovant, to secure the payment of $1,526.25, with interest at the rate of eighteen per cent. per annum, executed to M. A. Markert a mortgage of the following described tract of land, to wit:

"All and singular a certain tract or parcel of land situate, lying and being in the county of Edgefield, and said State, containing seven hundred acres, more or less, the same being a portion of the Reeves, Martin and Williams tract of land to me belonging, bounded by lands of the estate of Whitfield Brooks, lands of W. H. Holloway, lands of Kinard, lands of George A. Addison, lands of Henry May, lands of D. C. Bullock, and other lands of the said R. G. M. Dunovant."

This mortgage was recorded on 26th of January, 1875.

The referee reports the sum of $2,728.73 due on said mortgage debt on the 1st of October, 1879, of which sum $1,770.43 is principal, bearing interest.

On the 29th of May, 1876, the said R. G. M. Dunovant, to secure the payment of $950, with interest, executed a mortgage to B. F. Yoe, of a tract of land situate in the county of Edgefield, containing twelve hundred and fifty acres, more or less, and adjoining lands of G. W. Holloway, estate of Whitfield Brooks, lands of D. C. Bullock, lands of Henry May, Calvin Kinard and others.

This mortgage was not recorded until 27th of December, 1876.

The referee reports the sum of $1,179.13 due on said mortgage on the 1st of October, 1879, of which sum $988.80 is principal, bearing interest.

Several parties have become interested, by assignment, in this last mortgage since its execution. But there is no question before the court as to the ownership of the above claims.

The tract of land described in the mortgage to B. F. Yoe, is

the only property of the said R. G. M. Dunovant liable to levy and sale, and embraces the lands described in the mortgage to D. L. Turner, Probate judge, and in addition thereto four or five hundred acres more.

The land described in the mortgage to D. L. Turner, Probate judge, embraces the tract of land described in the mortgage to M. A. Markert, and in addition thereto about one hundred acres more.

On the 9th day of January, 1877, the whole of the lands of the said R. G. M. Dunovant, which are encumbered by said mortgages, were levied on under execution issued on the judgment in favor of James M. Richardson, and afterwards assigned to Bennett Holland. And in the year following the plaintiffs herein served their complaint setting forth the above facts, and alleging, among other things, that the said R. G. M. Dunovant invested the trust funds of his ward, Mary C., wife of George B. Addison, in the lands described in the complaint, and demanded judgment:

1. That the defendants, Bennett Holland and John T. Gaston, sheriff, their servants and agents, be enjoined and restrained from selling the lands of the said R. G. M. Dunovant as advertised under the levy made by the said John T. Gaston, sheriff, as aforesaid, and that the other defendants, their servants and agents, be also enjoined and restrained from attempting to enforce their liens on the said land.

2. That the lands purchased by the said R. G. M. Dunovant with the moneys of his ward, Mary C. Addison, be adjudged to be specifically liable for the payment of the judgment of said plaintiffs.

3. That the priority of the liens of the judgments and mortgages above set forth may be adjudicated. * * *

4. For their costs and disbursements in this action, and for such other and further relief in the premises as to equity may belong.

On the 22d day of March, 1879, it was referred, by order of this honorable court, to S. S. Tompkins, Esq., to take the testimony, to ascertain and state the amounts due on each claim and report the same.

On the 2d of October, 1879, the said referee filed his report, reporting, among other things, the above stated amounts as due on the said claims respectively on the first day of October, 1879.

No exceptions to the referee's report were filed by any of the parties, except by the defendant Holland, whose exceptions are substantially as follows, to wit:

1. That the referee in computing the amount due on the judgment in favor of James M. Richardson, and assigned to Bennett Holland, erred in not calculating interest on the said judgment at the rate of sixteen per centum per annum.

2. That the referee erred in not reporting that the amounts paid on said judgment were paid as interest, and not as a part of the judgment.

The law and the evidence considered, it is the opinion of the Court:

That the exceptions filed by the defendant, Bennett Holland, must be overruled. The note with all its incidents, including its power of accretion, or interest-bearing quality, merged in the judgment. *Free. Judg.*

A judgment at common law bore no interest. *Free. Judg.*, § 441; 1 *Hill* 79. And it is not capable of being impressed with any higher or lower rate of interest than that which the statute stamps upon it.

The act of 1866 enacts: "That in all money decrees and judgments of courts of law and equity hereafter enrolled or entered, * * * the legal interest shall be and remain at the rate of seven per centum per annum." 13 *Stat.* 429.

The judgment is not a confession of judgment. 6 *Stat.* 160, §§ 1, 2; 11 *Stat.* 72, 75; 3 *Blackstone* *395. It is a consent judgment by the court. But under our statutes there can be no difference in the grades of judgments as to the matter of interest. The judgment cannot be considered as a contract, for a contract in its final analysis made by debtor with creditor, is but a right of action conveyed by the debtor to the creditor, and the right of action ceases with the judgment, which is but the sentence of the law pronounced by the court. If the contract or note upon which the judgment is based had borne no rate of interest, still the judgment would bear interest at the legal rate of seven per

centum per annum. So the judgment could not bear a higher rate of interest, even though the note bore a rate exceeding seven per centum per annum. The other position of the defendant Holland, is equally untenable. He receipted for the two sums of money in part payment. These receipts were endorsed upon the sheriff's books, and were notice to third parties who could not be prejudiced by any private contract that might have existed between the judgment debtor and judgment creditor. But the evidence does not show that any contract that the judgment should bear sixteen per cent. interest existed, nor does it show that the payments were made under any contract to pay sixteen per cent. interest in consideration of forbearance. No doubt the judgment creditor and judgment debtor were under the impression that the legal effect of the judgment was to bear sixteen per cent. interest, and this alone would have prevented them from making any additional contract in regard thereto.

The judgment must be credited with the payments made, and it is a lien upon the entire tract of land, prior to all others, to the amount reported by the referee. But the proceeds of the sale of that portion of the land which was last mortgaged must first be applied toward the satisfaction of said judgment. *Ad. Eq.* 543, *n.* 1.

As against the mortgage to D. L. Turner, Probate judge, the defendant Markert stands in the position of an innocent purchaser for value without notice, and his mortgage is a lien to the amount reported by the referee upon the portion of land embraced in the said mortgage, prior to all others except the lien of the judgment in favor of James M. Richardson, assigned to Bennett Holland. The mortgage to D. L. Turner, Probate judge, was executed prior to the mortgage to B. F. Yoe, and also first recorded, and must therefore be next paid out of the proceeds of the land therein embraced.

The mortgage to B. F. Yoe is also a lien upon the entire tract of land, and, although last recorded, it was both executed and recorded before the judgment in favor of Butler and Youmans was entered up, and must therefore next be paid out of the proceeds of the sale of the entire tract of land.

The judgment in favor of Butler and Youmans is a lien upon the entire tract of land from the day it was entered, which being subsequent to the date of the foregoing liens, it is inferior to them and, therefore, cannot be paid until they are satisfied.

The evidence does not establish any secret or equitable trust in favor of the plaintiffs, and the judgment under which they claim is not a lien upon the land, having been obtained on the 11th day of March, 1870, and no action having since been taken to make the same a lien. *Code,* § 313; 15 *Stat.* 871.

The act of 1870, denying to final judgments, thereafter rendered, the incidents of a lien upon real property, is not unconstitutional as regards contracts entered into prior to its passage.

The remedy may be modified without impairing the obligation of the contract. *Sturges* v. *Crowninshield,* 4 *Wheat.* 122; *Ogden* v. *Saunders,* 12 *Id.* 270; *Mason* v. *Haile,* 12 *Id.* 370; *Bronson* v. *Kinzie,* 1 *How.* 311.

The land should be sold in such parcels and upon such terms as will most conduce to the payment of all claims upon the same.

It is therefore ordered, adjudged and decreed:

1. That two surveyors, one to be nominated by plaintiffs and one by defendants, go upon the land and ascertain the boundaries of the various tracts of land described in the mortgage above mentioned, and further to divide the land into such parcels or tracts as will sell to the greatest advantage and report their action to this court at the next term of the same.

2. That upon the confirmation of the report of the said surveyors, the tract of land described in the complaint be sold by the master for Edgefield county, on such terms and at such a time as may then to the court seem just and proper.

3. That after the payment of the plaintiffs' costs, and the costs of the surveyors and referee, the judgment of Bennett Holland, assignee of James M. Richardson, be first satisfied out of the proceeds of the sale of the said land by the payment of the amount reported by the referee, with interest on the interest-bearing portion from the 1st day of October, 1879. And for that purpose the proceeds of the sale of the portion of the land last mortgaged be first applied.

4. That the mortgage to M. A. Markert be next satisfied out of the proceeds of the sale of the land described therein by the payment of the amount reported by the referee, with interest on the interest-bearing portion from the first day of October, A. D. 1879.

5. That the mortgage to D. L. Turner, Probate judge, be next satisfied by paying into the Probate Court for the said county the amount reported by the referee, with interest on the interest-bearing portion from the 1st day of October, 1879, out of the proceeds of the sale of the land described in the said mortgage.

6. That the mortgage to B. F. Yoe be next satisfied out of the proceeds of the sale of the whole tract of land by the payment of the amount reported by the referee, with interest on the interest-bearing portion from the 1st day of October, 1879.

7. That the judgment in favor of Butler and Youmans be next satisfied out of the proceeds of the sale of the whole tract of land by the payment of the amount reported by the referee, with interest on the interest-bearing portion from the 1st day of October, 1879.

8. That the judgment in favor of George B. Addison and wife, under which plaintiffs claim, be next satisfied out of the proceeds of the sale of the whole tract of land by the payment of the amount reported by the referee, with interest on the interest-bearing portion from the 1st day of October, 1879.

9. That the remainder of the proceeds of the sale of the lands, if any there be, be paid to the defendant, R. G. M. Dunovant.

T. J. MACKEY,

April 5th, 1880.                                    *Circuit Judge.*

The judge overruled the exceptions of Holland, and upon the facts, as will be seen, decreed that the land be divided into suitable tracts for sale by surveyors; that it then be sold, the proceeds, after payment of costs, be applied, first, to the payment of the Holland judgment as reported by the referee, the interest to be calculated at seven per cent., and the payments already on it to be credited on that basis; second, to the Markert mortgage;

next to the D. L. Turner, Probate judge, mortgage; next to the B. F. Yoe mortgage; next to the Butler and Youmans judgment; then to the George B. Addison and wife judgment claimed by the plaintiff, and lastly, if any remainder, to be paid to the defendant, R. G. M. Dunovant.

From this decree the defendant Holland, the plaintiffs, the Probate judge, and the children of R. G. M. Dunovant appealed upon exceptions. Holland's exceptions raise the question whether his judgment should not have been estimated at sixteen per cent:, and, if not, whether the payments made by Dunovant should not have been credited on the interest, estimated at that rate; the plaintiffs', whether the act of the general assembly, March 1st, 1870, denying to final judgments the incident of a lien on real property, did not impair the obligation of contracts made prior to its passage, and was, therefore, unconstitutional.

The exceptions of the Probate judge and the guardian *ad litem* of the minor children of Dunovant, raised the question whether the mortgage of Markert should not have been credited with the sum of $1,500, with interest from the 5th of February, 1878, the profit on the Roseland tract of land, which, by agreement, Markert was to give to Dunovant. These three questions are the questions which arise in the case, and to these attention will now be directed.

The Holland judgment was obtained on a note payable to James M. Richardson, dated the 25th February, 1867, and due one day after date, with interest at the rate of sixteen per cent. per annum. The judgment was by confession, made on the same day. This judgment was afterwards assigned to Holland, who had the active energy of the *fi. fa.* renewed in November, 1876. The confession, endorsed on the declaration, was for the sum of $2,000, with interest from the 25th February, 1867, the date of the note, at the rate of sixteen per cent. per annum, and the date of the endorsement was the same as that of the note, the 25th February, 1867. The judgment was entered for $2,000, no rate of interest being mentioned therein. The *fi. fa.* was the ordinary *fi. fa.* in such cases. Upon this, two receipts had been entered by Holland—" in part of this case "—one for

$562, 5th January, 1869, and the other for $960, 5th February, 1872.

Now, was Holland entitled to recover on this judgment, sixteen per cent., as specified in the note and in the confession, or was the Circuit judge right in restricting him to seven per cent. after judgment? We concur with the Circuit judge, and we do not know that we can add anything to the argument by which he sustains his opinion.

He held that the act of 1866 (13 *Stat.* 439) controlled this question. That act enacts that in all money decrees and judgments in law and equity hereafter enrolled or entered  *  *  * the legal interest shall be and remain at the rate of seven per cent. per annum. This judgment was entered in 1867, the year after the passage of this act. Without attempting to vindicate or discuss the wisdom of this act, how can the appellant, when it is admitted "*ita lex scripta est,*" evade its provisions? By what authority could the sheriff collect more than seven per cent. upon a *fi. fa.* in his office, when the act stands in the way? It is said that the defendant consented and still consents to it. This, no doubt, is so, but this can have no effect as to the construction which shall be given to a judgment of the court, which is regulated, not by the consent of the parties, but by the act of the general assembly, in such case made and provided.

A judgment is defined to be the final determination of the rights of parties in the action. *Code,* § 268. It may be granted *in invitum,* or by consent. In either case it is the action of the court, in the one case reached by the evidence and law applicable to the facts, in the other pronounced by the consent of the parties. When it is granted upon a contract, it determines what the contract is and closes it, giving the party in whose favor the judgment is rendered, the means of enforcing the contract thus determined, or redress for its breach.

A judgment of this sort involves two ideas—the contract upon which it is rendered and the judgment itself. The one is the act of the parties—the other is the act of the court. They are entirely separate and distinct.

Now, at the time this contract was made by Dunovant with Richardson, there were no usury laws in existence in this State,

and Dunovant had the right to contract to pay any per cent. for the use of money that he saw proper, and such contract, at whatever per cent. agreed upon, was enforceable through the court, either by confession of judgment, or by regular judgment obtained by suit. But Dunovant had no right to contract for the action of the court. The legislature is the only authority that can give power to the courts, and the legislature had said, previous to this, that the courts could give no judgment or decree to bear more than seven per cent. interest. The courts can enforce legal contracts of parties, as made, up to the time of the judgment, but, when the judgment is pronounced, the rights of the parties are determined up to that moment, and then the judgment must be enforced according to the law applicable to judgments.

We concur with the Circuit judge, also, as to the effect of the payments made by Dunovant on this judgment. The receipts on the back of the *fi. fa.* show that they were ordinary payments, in part of the debt within; and, while it may be that Dunovant could have paid such amounts as he desired on the interest, over and above the seven per cent. allowed by the act, independent of and outside of the judgment and *fi. fa.*, yet, when these payments were made and credited on the *fi. fa.*, as in part of the debt therein, the court can make no other application but such as the act requires. So much for the exception of appellant Holland.

The plaintiffs' principal exception involves the constitutionality of the act of March, 1st, 1870, (*Code*, § 313,) which denies to final judgments the incident of a lien on real property. The plaintiffs contend that the obligation, upon which the decree under which they claim was obtained, was executed before the passage of this act; that, at that time, decrees and judgments had lien on real estate; that this was a part of the obligation of the contract, and that the act of 1870, *supra*, denying this lien, impaired this obligation, and was, therefore, unconstitutional, being in conflict with Article 1, section 10, of the constitution of the United States. The correctness of this position depends upon the meaning of the term "obligation," when applied to contracts.

This term has been often and ably discussed before this. Many authorities might be cited from decisions and writers outside of our own State, among them the often-quoted case of *Sturges* v. *Crowninshield*, 4 *Wheat.* 200, and *Kent* and *Story*, and many other authorities; but the meaning of this term having been so elaborately discussed and so fully determined in the recent cases of the *State* v. *Carew*, 13 *Rich.* 498, and *Wood* v. *Wood*, 14 *Rich.* 154, in our own State, it would scarcely be becoming for this court so soon to renew this discussion as if it were an open question.

These two cases, cited from our own reports, decide, in brief, that the obligation of a contract "is the legal tie which imposes a necessity of doing or abstaining from a particular act, as distinguished from the imperfect obligation arising from gratitude, charity, or other moral duties, binding upon conscience, but having no legal remedy for their enforcement. This latter is the essence of the legal obligation."

This idea as to this term is not only found in the common law, but was familiarly recognized by the Roman jurists in the maxim *Sub hac conditione si volam nulla fit obligatio.*

A well-recognized distinction is drawn between the contract itself and its obligation. The contract is the agreement of the parties; the obligation is the remedy which the law affords for its enforcement. There may be, and generally there is, a moral obligation in every contract, which ought to constrain the party making it to perform it, but with this the courts have nothing to do. If we were perfect beings, this moral obligation would at all times be sufficient, and there would be no necessity for courts or civil law; but, unfortunately, such is not the condition of humanity, and hence the necessity of some constraining power, more effectual, direct and imperative than the mere imperfect obligations classed as moral obligations.

The clear meaning of a legal obligation, as contradistinguished from a moral, cannot be better illustrated than by an unpaid note barred by the Statute of Limitations. There the legal obligation is gone, the moral remains; but the courts are powerless in such cases. Where, then, an act is passed which materially interferes with and impairs the legal remedy which

the courts afforded before the passage of the act for the enforce-
ment of contracts, such act is unconstitutional. Did the act of
1870, *supra,* have this effect upon contracts like this in this
case? We think not. The lien on real estate which the
previous law allowed to decrees and judgments was no part of
the remedy of enforcement. It was a mere incident to the
judgment which, in fact, had a tendency to delay and weaken its
enforcement. Taking away this lien imparted to the judgment
greater vigor and more speedy execution. Judgment having
been obtained, this act required, in its effect, the party to act
and to act promptly. The *fi. fa.* for its enforcement was left at
his command, and the remedy for the collection of his money
was in fact made more effectual. It relieved the party plaintiff
from all claim for delay and further forbearance, and it required
some prompt action on his part. Besides the act did not entirely
destroy the lien, it only prevented the lien in the absence of a
levy. By the terms of the act, by keeping the *fi. fa.* levied, a
lien could not only be made to attach but it could be preserved.

Our conclusion is that the act of 1870 did not impair the
obligation of the contract under which the plaintiff claims, and,
therefore, that the ruling of Judge Mackey on this subject is
not obnoxious to plaintiffs' exceptions. In any event the act of
1870 modified merely the previous remedy which, according to
the authorities, may be done without impairing the obligation.
*Sturges* v. *Crowninshield,* 4 *Wheat.* 122; *Ogden* v. *Saunders,*
12 *Id.* 270; *Mason* v. *Haile, Id.* 370.

The Probate Judge, Charlton, and the guardian *ad litem* of
the minor children of the defendant Dunovant, except to the
decree because it fails to require the Markert claim to be credited
with the profit made by Markert in the purchase and sale of the
Roseland tract of land, to wit, the sum of $1,500 and interest.
We think there is foundation for this exception. Dunovant
had purchased this land in December, 1877, at the price of
$5,000; his purchase was turned over to Markert under an
agreement or contract that Dunovant was to have credit on his
debt to Markert for the profit or advance in price that Markert
might obtain in a resale. Markert did resell at an advance of
$1,500 on the 5th of January, 1878. Why, then, should not

Dunovant have the benefit of this advance? It is said that the contract only allowed Dunovant the benefit of this profit when it was realized by Markert, and that Markert had not as yet realized it.

The evidence is that Markert, on the 5th of February, 1878, resold the land at the price of $6,500, $2,000 of which was paid in cash, and the residue amply secured by the bond of the purchaser and a mortgage of the premises. Now, under these circumstances, when the assets of Dunovant are being marshaled for distribution among his creditors, among whom is Markert, can he fold his arms and say, I have not realized this profit? If he had submitted evidence that the purchaser was insolvent, or even doubtful; that he had neglected to secure the debt by mortgage of the land, or, having done so, that the land had greatly depreciated in value, and was not now a sufficient security, or any evidence of this kind, showing that his actual realization of this profit was precarious, then there would be some justice in awaiting further developments; but when the proof is that $2,000 of the purchase-money has been paid and the residue is amply secured by the bond of the purchaser, with a mortgage of the premises, we think the court below might well have directed that Markert's claim should be credited with the $1,500 at the day of sale.

There were other questions raised in the exceptions of the different parties; but the questions above considered by the court embrace those principally discussed in the argument. We think that the decree of Judge Mackey should be affirmed as to all matters therein, except the last in reference to the profit in the resale of the Roseland tract of land by Markert.

It is the judgment of this court that the judgment of the Circuit Court be modified in accordance with the principles of this opinion, and for that purpose that the case be remanded to the Circuit Court.

McIVER and McGOWAN, A. J.'s, concurred.